Hillsborough-southern judicial district
No. 93-772

## Nash Family Investment Properties & *a.*

v.

## Town of Hudson & *a.*

June 9, 1995

*Carol A. Rolf,* of Amherst, by brief and orally, for the plaintiffs.

*Soule, Leslie, Zelin, Sayward & Loughman,* of Salem (*Barbara F. Loughman* and *Michael S. Elwell* on the brief, and *Ms. Loughman* orally), for the defendants.

JOHNSON, J. This case concerns special assessments levied against the plaintiffs for the construction of a sewer near their lots in the Town of Hudson. The plaintiffs are Nash Family Investment Properties, Nash Family Investment Trust, Nash-Tamposi Family Investment, Tamposi Family Investment Properties, Nash & Clegg, Nash-Stellos Family Investment Properties, D.P.C.S. Investment Property, Samuel A. Tamposi & Gerald Q. Nash, Samuel A. Tamposi 1987 Trust, Gerald Q. Nash 1987 Trust, Leon P. Brassard, d/b/a Heat, Inc., Acorn Leasing Co., Inc., Q. Peter Nash, and Samuel Tamposi, Jr. The defendants are the Town of Hudson (town) and the Hudson Town Council (town council). The plaintiffs petitioned the Superior Court (*Lynn,* J.) to abate the assessments. The court denied abatement on all but three lots and partially granted the defendants' motion for attorney's fees. We affirm in part, vacate in part, and remand.

In March 1984, voters at the Hudson town meeting voted to raise and appropriate $1,670,000 for construction of a sewer in the Sagamore Industrial Park, where the plaintiffs' lots are located. The warrant article passed by the town authorized the Hudson selectmen to raise the money by issuing bonds under RSA chapter 33, the Municipal Finance Act, and directed them "to enter into contracts or agreements for the actual costs with industry or industrial parks which shall provide for the payment to the Town by each such industry or industrial park for the cost of extending sewer lines to, or providing sewage facilities for, the industry or industrial park . . . ."

In December 1985, the town voted "to terminate any previously-approved method of capital cost recovery pertaining to sewer construction projects, and in lieu thereof to authorize the governmental authority referred to in RSA 149-I:7 to implement a fair and equitable method of capital recovery for all sewer projects in the Town of Hudson . . . ." Effective January 1986, the town adopted a charter and town council form of government.

The town council hired Park Construction to build the sewer in the Sagamore Industrial Park. Although Park was the low bidder on the project, its stated contract price was $2,007,388, well above the $1,670,000 appropriated in 1984. As a consequence, the size of the project was reduced temporarily to keep the price within the 1984 limit. Park agreed to the new terms and completed the scaled-down project, designated Phase One, in June 1988. That month, the council voted to assess lot owners in the industrial park for the cost of the sewer. In the fall of 1988, the council authorized construction of Phase Two, the remainder of the original project, and appropriated $400,000 to fund it. The council eventually added this cost and project overruns to the lot owners' assessments. The plaintiffs petitioned the superior court for abatement, and this appeal followed.

The plaintiffs' first argument on appeal concerns interest earned on the Phase One bond money from 1985, when the town issued the bonds, to 1987, when the town spent the money to pay for the project. This interest, approximately $185,000, was transferred from the Sagamore sewer account to the town's general fund. The town did not use it to offset the assessments later levied against the Sagamore Industrial Park property owners to pay for the cost of the project. We conclude that the defendants may have acted illegally.

The issue presented is one of first impression for this court. Our case law offers little guidance, and no statute directly addresses the problem. RSA 33:3-a, I (1988), for example, provides that "[t]he proceeds of any sale of bonds or notes shall be used only for the purposes for which the loan was incurred"; "proceeds" of a sale ordinarily means "what is produced or derived from [a sale] by way of total revenue," WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1807 (unabridged ed. 1961), not interest earned on that money.

More helpful is RSA 149-I:7 (1990), the source of the town's authority to assess the plaintiffs for the cost of the sewer. Although RSA chapter 149-I generally applies only to cities, *see* RSA 149-I:1 (1990), the town adopted its provisions in accordance with RSA 149-I:24 (1990) and is therefore governed by them. RSA 149-I:7 reads:

> The [town] may assess upon the persons whose drains enter
> such main drains, common sewers or treatment facilities, or

whose lands receive special benefit therefrom in any way, their *just* share of the expense of constructing and maintaining the same or paying off any capital debt or interest incurred in constructing and/or maintaining the same.

(Emphasis added.) We hold that it is unjust for a municipality to use interest earned on sewer bond money for any purpose other than to ease the financial burden of the property owners charged with paying for the sewer. RSA 149-I:7 allows the town to assess the plaintiffs for the total cost of the project, including the interest incurred on the bond debt. It would therefore be inequitable to deprive the plaintiffs of the interest earned on any unspent bond money. To do so would unfairly provide municipalities with an unearned windfall at the expense of the assessed lot owners. *Cf. United States v. Michigan,* 518 F. Supp. 966, 969 (E.D. Mich. 1981).

The defendants argue that RSA 33:3-a, I, prohibits a municipality from using interest earned on bond money to offset assessments. They quote: "Any premium received shall not be used to increase the amount to be spent for the purpose for which the loan was originally incurred." RSA 33:3-a, I. We disagree with the defendants' interpretation of this statute. Even if "premium" could be construed to include interest, *but see* WEBSTER'S, *supra* at 1789, we do not understand how applying the interest to offset the plaintiffs' assessments would have increased the amount to be spent on the sewer project. The town intended to recoup the total cost of the project from the owners of the sewer district lots. Using the interest to ease the owners' burden does nothing to change this amount. The defendants cite no evidence that the sewer would have been built more expensively had the interest remained in the sewer account during construction.

The defendants contend alternatively that the plaintiffs were not harmed by the town's decision to place the interest in the general fund because the town used an even greater amount of its general funds to pay for sewer costs that could have been charged to the plaintiffs. These costs arose because of the way the defendants calculated the assessments on the lots in the sewer district. The town divided the total cost of the sewer project by the total number of acres in the sewer district, thus achieving a cost per acre. Each lot in the district was then assessed by multiplying this figure by the number of acres in the lot. The town now deems "uncollectible" several lots included in the sewer district. The defendants argue that although the town had the right to recover the "uncollectible" assessments from the remaining lots in the district, the town instead paid the uncollectible assessments out of its general fund.

The share of the total project cost attributable to the "uncollectible" lots under the town's original calculation is greater than the interest earned on the bond money. Consequently, the defendants argue that the plaintiffs were not harmed by the town's transfer of the interest into the general fund because the town has paid a greater amount out of its general fund for the "uncollectible" assessments. The defendants argue that if the town had used the interest to reduce the plaintiffs' assessments at the outset, the town could have then increased the plaintiffs' assessments to pay for the "uncollectible" lots, thus destroying any advantage gained from the interest.

■ The defendants' position has merit. As presented, it does not conflict with our stated principle that interest earned on unspent bond money must be used to ease the lot owners' assessment burden. The defendants, for example, do not argue that the town could place the interest in the general fund *and* increase the plaintiffs' assessments to recoup the "uncollectible" assessments. Moreover, the defendants' argument complies with the rule that assessments must not substantially exceed the benefits received. *See Chasan v. Village District of Eastman,* 128 N.H. 807, 818, 523 A.2d 16, 23 (1986). As discussed below, the plaintiffs failed to prove that their assessments violated this rule; these assessments would not change if we accepted the defendants' view.

■ The plaintiffs, however, challenge two assumptions underlying the defendants' position: that the lots are truly "uncollectible" and that the town has the right to charge the plaintiffs for any portion of the project cost attributable to such lots. Six lots are at issue: a lot owned by the federal government, two residential lots, and the three lots whose assessments were abated by the trial court. The parties do not dispute that the federal lot and the latter three are exempt from assessment, and we agree that these lots can be deemed truly uncollectible. With regard to the two residential lots, the plaintiffs appear to consider the lot owners liable for a share of the sewer costs and thus currently delinquent for nonpayment of assessments. The defendants claim that the assessments on these lots were actually abated. The record does not provide a clear answer to this question, and the trial court never addressed it. We think it important to have the trial court resolve this factual dispute, and we therefore remand. If the residential lot owners are liable for a portion of the Sagamore sewer project, the burden resulting from their nonpayment should fall entirely on the town. The town has a statutory means available to it to collect unpaid assessments, *see* RSA 149-I:11 (Supp. 1994). Moreover, we find that the plaintiffs would be paying more than their "just share" of the sewer construction, RSA 149-I:7, if they were forced to pay for another lot owner's lawful assessment.

■ The question still remains whether assessments first calculated on uncollectible lots should now be deemed the responsibility of the remaining lot owners in the Sagamore sewer assessment district. The record does not reveal whether the sewer was specifically designed to serve the uncollectible lots or, if so, whether this design increased the cost of the sewer. Like collectibility, this issue was not addressed by the trial court. We think it would be inequitable, however, to charge the collectible lots for any such additional cost and therefore submit this question to the trial court on remand as well. If the plaintiffs can prove that the sewer would have been built less expensively had the uncollectible lots not been included in the original assessment district, then the additional cost should be deducted from the amount attributable to those lots under the town's per-acre assessment calculation. If the remaining sum is still equal to or larger than the interest the town earned on the bond money, then the defendants should prevail. Their argument that the interest money is offset by an amount chargeable to the plaintiffs will have succeeded. The town will then be under no obligation to reimburse the plaintiffs for the interest money so long as it does not charge them for an additional, equivalent amount.

The plaintiffs' next argument involves legal fees that were included in the total cost of the sewer project and passed on to the plaintiffs in their assessment bills. The superior court ruled that $2,831.50 of these fees should be excluded from the assessments. On appeal the plaintiffs argue that the superior court should have deleted even more of the legal fees from the assessments. At trial and in their requests for findings of fact, however, the plaintiffs asked only that $2,831.50 be removed. Although the plaintiffs argued for an unspecified greater deletion in their motion for reconsideration, the exhibit cited in that pleading is the one they relied on earlier for the $2,831.50 figure. On appeal they continue to cite to this exhibit, and to no other. As the exhibit supports the trial court's finding, we affirm the finding. *See Shallow Brook Assoc's v. Dube,* 135 N.H. 40, 47, 599 A.2d 132, 136 (1991).

The plaintiffs next argue that the cost of the sewer project was unreasonably high and that the assessments, which reflect this cost, are therefore beyond the defendants' taxing authority. The plaintiffs point to several aspects of the sewer construction to show that it could have been performed at less expense. We note that the record supports the superior court's ruling that the project's cost was reasonable, *see id.*; more importantly, however, we find the plaintiffs' view of the law to be fundamentally in error.

■ ■ An allegation that a public improvement could have been constructed at less expense is insufficient to prove an illegal assessment. Assessments "are conclusive in the absence of fraud, bad faith or arbitrariness," *Yencing Realty Co. v. City of Concord,* 116 N.H.

580, 583, 364 A.2d 875, 878 (1976), and "[t]he burden is on the plaintiff[s] to show that the assessment[s] made against [their] property . . . substantially exceed[ ] the benefits conferred or [are] disproportionate to the assessments of the other owners affected," *id.* Because of our holding regarding the uncollectible lots, disproportionality is not at issue with regard to this question of reasonableness. We therefore focus on the assessments-versus-benefits balancing test. This test leaves no room for the plaintiffs' notion that one can judge the reasonableness of a project's cost in the abstract. Instead, it requires a balancing of the assessments, derived from the cost, against the value of the project to the affected lots. Reasonableness is determined by the result of the test: the assessments are unreasonable if they substantially exceed the benefits received, and are *per se* reasonable if they do not.

The plaintiffs must prove that their assessments substan- tially exceed the benefits received from the sewer. *Id.* The plaintiffs cite three lots as lacking sufficient benefits to warrant the assessments levied. Two of these lots were not mentioned in the notice of appeal, and therefore we focus on just the one properly before us. SUP. CT. R. 16(3)(b). The record supports the superior court's ruling that this lot, lot 10-5, is specially benefitted by the new sewer. The plaintiffs argue that lot 10-5 receives no benefits from the Sagamore sewer because it already has access to the Lowell Road sewer. The evidence reveals, however, that most of the lot slopes away from the Lowell Road sewer and toward the Sagamore sewer. The lower portion of the lot could thus be serviced by the Sagamore sewer without the use of a pump station, while connection to the Lowell Road sewer from this lower elevation might be more costly. The plaintiffs offered no evidence showing the actual value of the Sagamore sewer for lot 10-5 and simply argue here that it must be zero. Because the record demonstrates that the plaintiffs are incorrect, we hold that they have failed to meet their burden of proving that the assessment for lot 10-5 substantially exceeds the benefits received.

The plaintiffs next argue that the defendants illegally charged them hook-up fees. First, they contend that the fees duplicate the assessments charged for the construction of the Sagamore sewer. Witnesses at trial, however, testified that the hook-up fees were not duplicative, and the superior court was entitled to rely on this testimony. *See Shallow Brook Assoc's,* 135 N.H. at 47, 599 A.2d at 136.

Second, the plaintiffs assert that the town lacked authority to charge them hook-up fees because the money collected may be spent on future sewer projects. We disagree. The testimony at trial established that the fees were assessed based on earlier construction that had already been paid for by town-wide taxes. *See* RSA 149-I:7 (1990). The hook-up fees thus served to reimburse the town for the

cost of the earlier sewers in the same way that the special assessments discussed above reimbursed the town for the bonds sold to finance the Sagamore project. That the cash collected from the hook-up fees may be applied to future projects is irrelevant. The plaintiffs cite no evidence to bolster their contention that the earlier sewer construction does not specially benefit their lots; accordingly, they fail to meet their burden of proof on this issue. *See Yencing Realty Co.,* 116 N.H. at 583, 364 A.2d at 878.

▮▮▮▮ The plaintiffs also invoke the theory of "administrative gloss," maintaining that the defendants could not legally charge them hook-up fees because the resolution authorizing such fees had not been enforced for five years. This argument, too, must fail. The doctrine of administrative gloss is a rule of statutory construction. *Hansel v. City of Keene,* 138 N.H. 99, 104, 634 A.2d 1351, 1354 (1993). As we recently explained:

> An administrative gloss is placed on an ambiguous clause of a zoning ordinance when those responsible for its implementation interpret the clause in a consistent manner and apply it to similarly situated applicants over a period of years without legislative interference. If an administrative gloss is indeed found to have been placed on a clause, the municipality may not change such a *de facto* policy, in the absence of legislative action, because to do so would presumably violate legislative intent.

*Id.* (citations omitted). Assuming this doctrine applies to ordinances involving sewer hook-up fees, the plaintiffs' point must fail because they allege no ambiguity in the relevant ordinances and cite no evidence of a *de facto* policy of non-enforcement regarding similarly situated lots. *See Tessier, Ex'r v. Town of Hudson,* 135 N.H. 168, 170–71, 599 A.2d 1244, 1246 (1991).

In their reply brief, the plaintiffs argue that "the Town is without authority to demand that the buildings on the lots with adequate systems connect to the public sewer at this time and pay additional charges." This issue is not properly before us because it was not raised in the plaintiffs' notice of appeal. SUP. CT. R. 16(3)(b).

▮▮▮ Next, the plaintiffs argue that the warrant article passed by the 1984 town meeting precluded the defendants from assessing the plaintiffs for the Sagamore sewer project without their permission. As no permission was requested or granted, the plaintiffs assert the assessments are illegal. To respond to this argument, we need only cite to the 1985 Hudson town meeting, which voted "to terminate any previously-approved method of capital cost recovery pertaining to sewer construction projects, and in lieu thereof to authorize the

governmental authority referred to in RSA 149-I:7 to implement a fair and equitable method of capital recovery for all sewer projects in the Town of Hudson . . . ." This court has stated that, "[o]rdinarily, where no rights of third parties have attached, . . . a municipal corporation has the power to reconsider or rescind any action previously taken." *Frost v. Hoar,* 85 N.H. 442, 443, 160 A. 51, 52 (1932). The plaintiffs neither argue nor presented evidence to show that they acquired vested rights in the 1984 town meeting vote; therefore, we hold that nothing prevented the voters from changing their minds at the 1985 town meeting.

The plaintiffs' arguments concerning violations of section 60 of the Hudson Charter do not appear in their notice of appeal, and therefore are not properly before us. SUP. CT. R. 16(3)(b). Moreover, it appears that any violations that may have occurred were merely technical in nature, resulting in no prejudice to the plaintiffs and not meriting a reversal.

Next, the plaintiffs argue that the sewer project was improperly separated into two phases. They contend that the defendants violated the Hudson Charter's requirement that appropriations greater than $500,000 must be approved by a two-thirds vote of both the town council and the town meeting. They claim that the defendants illegally avoided the requirement by separating the later, supplemental bond requests into two of less than $500,000 each. We find no merit to this contention. The charter provision at issue provides that "no bonds shall be authorized by the Council in excess of five hundred thousand dollars ($500,000.) *per authorization,* except by a two-thirds vote of the Council and a two-thirds vote at a regular town biennial election or special ballot called by the Council." (Emphasis added.) Nothing in this language requires the town council to lump similar bond requests together, and the evidence supports the superior court's finding that doing so here would have been impractical.

Finally, we address the issue of attorney's fees. The superior court awarded the defendants $30,450, approximately half of their fees. The court based the award largely on a finding that the plaintiffs unnecessarily prolonged the litigation by failing to conduct sufficient discovery. The court ruled:

> [I]t is clear that the plaintiffs' "shotgun" approach to conducting this litigation has unnecessarily prolonged and complicated this case and resulted in additional unwarranted expense to the Town. Although plaintiffs have prevailed on a small portion of the case, the record plainly establishes that they failed to conduct discovery which would have established pretrial that certain claims had no merit. . . . In effect, plaintiffs were using the trial itself to conduct

discovery, presumably in the hope that some Town official or other would say something that might be helpful to plaintiffs.

The court calculated the award by adding together the fees incurred by the defendants after October 26, 1992, and subtracting (1) the cost the defendants would have incurred had the plaintiffs conducted sufficient discovery, and (2) the defendants' fees attributable to the claims on which the plaintiffs prevailed. The court judged October 26, 1992, to be the date by which the plaintiffs "should have known that there were major factual and legal difficulties with their case." The plaintiffs allege error in this award.

The guidelines for resolving the issue are well-settled:

> An award of attorney's fees . . . must be grounded upon statutory authorization, an agreement between the parties, or an established exception to the rule that each party is responsible for paying his or her own counsel fees. We have recognized exceptions where an individual is forced to seek judicial assistance to secure a clearly defined and established right if bad faith can be established; where litigation is instituted or unnecessarily prolonged through a party's oppressive, vexatious, arbitrary, capricious or bad faith conduct; as compensation for those who are forced to litigate in order to enjoy what a court has already decreed; and for those who are forced to litigate against an opponent whose position is patently unreasonable.

*Clipper Affiliates v. Checovich,* 138 N.H. 271, 278, 638 A.2d 791, 796 (1994) (citations, quotations, and brackets omitted). Further,

> [t]he standard of review applied to the award of attorney's fees is whether the trial court abused its discretion. To constitute an abuse, reversible on appeal, the discretion must have been exercised for reasons clearly untenable or to an extent clearly unreasonable to the prejudice of the objecting party. In applying this standard, we look for some support in the record for a trial court's decision concerning attorney's fees.

*City of Dover v. Kimball,* 136 N.H. 441, 445, 616 A.2d 516, 518 (1992) (citations, quotations, and brackets omitted).

The superior court grounded its award on the perceived unnecessary length of the litigation and baseless nature of many of the plaintiffs' claims. As the defendants seek to uphold the award on the same grounds, we focus on the corresponding exceptions to the rule that each party must pay for his or her own attorney's fees.

First, we consider whether the litigation below was "unnecessarily prolonged through [the plaintiffs'] oppressive, vexatious, arbitrary, capricious or bad faith conduct." *Clipper Affiliates,* 138 N.H. at 278, 638 A.2d at 796. The defendants do not allege bad faith; thus the question is whether the plaintiffs' failure to conduct further discovery can be deemed oppressive, vexatious, arbitrary, or capricious. We hold that it cannot. After reading the trial transcript, we can readily sympathize with the superior court's frustration with the trial tactics displayed by the plaintiffs' counsel. Moreover, we continue to adhere to the view that thorough discovery promotes efficiency in trial practice, prudent allocation of scant judicial resources, and accurate resolutions of disputes. *See Scontsas v. Citizens Insurance Co.,* 109 N.H. 386, 388, 253 A.2d 831, 832–33 (1969). In this instance, however, we do not view the attorney's strategical decisions by themselves as oppressive, vexatious, arbitrary, or capricious, and therefore cannot uphold the court's award of attorney's fees on this basis.

We now consider whether the defendants were "forced to litigate against an opponent whose position [was] patently unreasonable." *Clipper Affiliates,* 138 N.H. at 278, 638 A.2d at 796. Although we agree with the superior court and the defendants that most of the plaintiffs' claims were meritless, we do not judge them to be so patently unreasonable that an award of attorney's fees was justified. The plaintiffs' erroneous factual assumptions, listed in the defendants' brief, were each subsidiary to a larger factual and legal issue. Other aspects of these issues enjoyed some, albeit weak, factual support. Thus, we view the faulty assumptions more as failures of proof than examples of patently unreasonable positions.

The defendants fault the plaintiffs for not presenting any appraisal evidence to prove the value of the sewer to their lots. The defendants overstate the importance of the assessments-versus-benefits issue to the plaintiffs' case. The plaintiffs grounded their petition for abatement on numerous theories, including the bond interest issue, the question of reasonable costs, alleged violations of charter provisions, and due process and equal protection claims. Although many of these theories ultimately proved unsuccessful, overall the plaintiffs' case did not lack "any reasonable basis in the facts provable by evidence, or any reasonable claim in the law as it is, or as it might arguably be held to be." *Keenan v. Fearon,* 130 N.H. 494, 502, 543 A.2d 1379, 1383 (1988); *see also Adams v. Bradshaw,* 135 N.H. 7, 17–18, 599 A.2d 481, 488 (1991); *cert. denied,* 112 S. Ct. 1560 (1992).

We are mindful of the deference due a trial court's decision on attorney's fees but conclude here that the superior court abused its discretion, particularly in its focus on the plaintiffs' discovery tactics. We therefore vacate the award.

Issues raised by the parties but not addressed in this opinion have been fully considered and found meritless. *See Vogel v. Vogel,* 137 N.H. 321, 322, 627 A.2d 595, 596 (1993).

*Affirmed in part; vacated in part; remanded.*

All concurred.