Hillsborough-northern judicial district
No. 94-709

ANDREW CONFORTI & a.

v.

CITY OF MANCHESTER

May 29, 1996

*William H. Kelley, P.A.*, of Manchester (*Roy W. Tilsley, Jr.*, on the brief and orally), for the plaintiff and intervenors.

*Thomas I. Arnold, III*, assistant city solicitor, by brief and orally, for the defendant.

HORTON, J. The plaintiff, Andrew Conforti, and the intervenors, Orion Theatre, Inc. and Robert A. Howe, appeal a ruling of the

Superior Court (*O'Neill*, J.) that the Zoning Board of Adjustment (ZBA) of the City of Manchester (city) correctly concluded that the city zoning ordinance did not permit live entertainment on the property owned by the plaintiff and leased to the intervenors, and that live entertainment was not a preexisting, nonconforming use of the property, which, at the time of enactment of the ordinance, was used only as a movie theater. We affirm.

The plaintiff owns the Empire Theater in Manchester. The theater, erected as a movie house in 1912, is located in what is now a B-1 zoning district. The plaintiff leased the property to Orion Theatre, Inc., who in turn subleased it to Robert Howe. In 1990, the city granted a building permit for interior renovations of the theater, recognizing that, although the use of property as a movie theater was not allowed in a B-1 zoning district, the use of the Empire Theater to show movies was a preexisting, nonconforming use.

Following the 1990 renovations, Howe began arranging for live concerts to be performed at the Empire Theater. Approximately sixty live shows, mostly rock concerts, were performed before the city buildings department notified the plaintiff that use of the theater for purposes other than showing movies violated the city zoning ordinance. The plaintiff appealed this decision to the ZBA, which denied both his appeal and motion for a rehearing. Pursuant to RSA 677:4 (1986) (amended 1994), the plaintiff appealed to superior court. Orion Theatre, Inc. and Howe subsequently intervened in this action. The trial court upheld the ZBA's decision, and this appeal followed.

First, the plaintiff and intervenors argue that the city zoning ordinance permits live concerts in a B-1 zoning district. They point out that none of the categories listed in section 4.03 of the city zoning ordinance, which defines the permitted uses in each zoning district, specifically refer to movie theaters or live entertainment in a theater setting. They assert that subsections 4.03(12) and (13), which permit adult recreation centers and recreational facilities in a B-1 zoning district, encompass both movie theaters and live entertainment. They contend that this interpretation is supported by the testimony of the deputy building commissioner for the Manchester Department of Buildings.

"Interpretation of a zoning ordinance is a question of law for this court . . . ." *Healy v. Town of New Durham*, 140 N.H. 232, 236, 665 A.2d 360, 365 (1995). The plaintiff and intervenors essentially assert that subsections 4.03(12) and (13) have been interpreted by the city to include movie theaters and live entertainment and we should,

therefore, adopt this interpretation pursuant to the doctrine of administrative gloss.

> The doctrine of administrative gloss is a rule of statutory construction. . . . An administrative gloss is placed on an ambiguous clause of a zoning ordinance when those responsible for its implementation interpret the clause in a consistent manner and apply it to similarly situated applicants over a period of years without legislative interference. If an administrative gloss is indeed found to have been placed on a clause, the municipality may not change such a *de facto* policy, in the absence of legislative action, because to do so would presumably violate legislative intent.

*Nash Family Inv. Prop. v. Town of Hudson*, 139 N.H. 595, 602, 660 A.2d 1102, 1108 (1995) (citation and quotation omitted).

As early as 1990, when the department of buildings issued a building permit for renovations on the Empire Theater, the department concluded that movie theaters were not a permitted use in a B-1 zone. Furthermore, the deputy building commissioner testified at trial that neither movie theaters nor live entertainment is permitted in a B-1 zoning district. Although he stated that a movie theater would be classified as a recreational facility and live entertainment would be classified as a recreational use of the property, he concluded that movie theaters were allowed only in higher density commercial districts such as B-2, B-3, and B-4 districts. Moreover, he testified that in the absence of a specific provision dealing with theaters, subsection 4.03(16) has been interpreted to cover movie theaters. Subsection 4.03(16) authorizes property to be used as amusement halls, arcades, and dance halls in B-2 and B-4 zones. We conclude that the administrative gloss that has been given to the zoning ordinances is that movie theaters and live entertainment are not permitted uses in a B-1 zone. The trial court, therefore, correctly rejected the argument that the zoning ordinance authorizes the use of the Empire Theater for live performances.

The plaintiff and intervenors next contend that the trial court erred in concluding that holding live performances at the Empire Theater is an expansion of a preexisting, nonconforming use. We "will uphold the decision of the superior court unless that decision is not supported by the evidence or is legally erroneous." *Ray's Stateline Market v. Town of Pelham*, 140 N.H. 139, 143, 665 A.2d 1068, 1071 (1995) (quotation omitted). A zoning ordinance does not apply to structures or uses of the property that existed at the

time the ordinance was enacted. *See* RSA 674:19 (1986). An ordinance, however, "shall apply to any alteration of a building for use for a purpose or in a manner which is substantially different from the use to which it was put before alteration." *Id.*

■    "The policy of zoning law is to carefully limit the enlargement and extension of nonconforming uses. The ultimate purpose of zoning regulations contemplates that nonconforming uses should be reduced to conformity as completely and rapidly as possible." *New London Land Use Assoc. v. New London Zoning Board*, 130 N.H. 510, 518, 543 A.2d 1385, 1389 (1988) (citations, quotation, brackets, and ellipses omitted). "The burden of establishing that the use in question is fundamentally the same use and not a new and impermissible one is on the party asserting it." *New London v. Leskiewicz*, 110 N.H. 462, 467, 272 A.2d 856, 860 (1970).

> In deciding whether the particular activity is within the scope of the established or acquired nonconforming use consideration may be given to, among others, the following factors: (1) to what extent does the use in question reflect the nature and purpose of the prevailing nonconforming use; (2) is it merely a different manner of utilizing the same use or does it constitute a use different in character, nature and kind; (3) does this use have a substantially different effect on the neighborhood.

*Id.* at 467–68, 272 A.2d at 860.

■    The question in this case, therefore, is whether the trial court erred in concluding that the use of the Empire Theater for live performances is substantially different in character, nature, or kind than the use of the theater to show movies. *See* RSA 674:19. The plaintiff argues that the purpose of the Empire Theater is to provide entertainment in a theater setting. The trial court rejected this broad characterization of the theater's purpose. In order to determine the nature of the facility's permissible nonconforming use, we must look to the use of the property at the time the ordinance giving rise to the nonconforming use was enacted. *See Ray's Stateline Market*, 140 N.H. at 143, 665 A.2d at 1071. The ordinance at issue was adopted in 1965. Although live music accompanied the early silent movies, with the introduction of the "talkies," the performance of live music at the Empire Theater largely ended in the 1950s. The record contains no evidence that the Empire Theater was used for any purpose other than to show movies at the time the ordinance was enacted. The plaintiff cannot establish a permitted expansion of a nonconforming use by simply showing that the new

use is "generically the same as the old." 1 ANDERSON'S AMERICAN LAW OF ZONING § 6.37, at 603 (K. Young ed., 4th ed. 1995). Such an approach would run counter to the policy of zoning law, which is "to carefully limit the enlargement and extension of nonconforming uses." *New London Land Use Assoc.*, 130 N.H. at 518, 543 A.2d at 1389.

■ Whether a different use of the property is a substantial change in the nature or purpose of the nonconforming use turns on the facts and circumstances of the particular case. *See Town of Hampton v. Brust*, 122 N.H. 463, 468, 446 A.2d 458, 461 (1982). The record supports the trial court's conclusion that live entertainment differs substantially from showing movies. There was testimony that when bands perform live at the theater they bring their own lighting and occasionally sound equipment. There was also evidence that the noise levels were higher during live performances than when movies were shown. In fact, the buildings department initially was made aware that live music was being performed at the theater by complaints of the noise during the concerts. Accordingly, we conclude that the trial court's decision was neither unsupported by the evidence nor legally erroneous. *See Ray's Stateline Market*, 140 N.H. at 145, 665 A.2d at 1072.

*Affirmed.*

All concurred.