1998-NMSC-050

970 P.2d 599

**HIGH RIDGE HINKLE JOINT VENTURE and Gene Hinkle, Petitioners–Petitioners,**

v.

**The CITY OF ALBUQUERQUE, et al., Respondents–Respondents,**

and

**Embudo Canyon Neighborhood Assn., Interested Party–Respondent.**

No. 24,297.

Supreme Court of New Mexico.

Dec. 3, 1998.

Bryan and Flynn–O'Brien, Timothy V. Flynn–O'Brien, Albuquerque, for Petitioners.

Robert M. White, City Attorney, Randy M. Autio, Assistant City Attorney, Albuquerque, Dietz Law Offices, Ethelinda Dietz, Albuquerque, for Respondents.

## OPINION

McKINNON, Justice.

{1} High Ridge Hinkle Joint Venture (Hinkle) appeals from a zoning decision of the appellee, City of Albuquerque (City) through its Council. The City's first decision on the interpretation of the ordinance in question was remanded to it after an appeal to the Court of Appeals. *High Ridge Hinkle Joint Venture v. City of Albuquerque,* 119 N.M. 29, 888 P.2d 475 (Ct.App.1994) [hereinafter *Hinkle I* ]. The City's second interpretation was made in February 1995, and Hinkle again appealed to the Court of Appeals, which affirmed the ruling. *High Ridge Hinkle Joint Venture v. City of Albuquerque,* 1997–NMCA–046, 123 N.M. 394, 940 P.2d 1189. We granted certiorari on May 29, 1997, *High Ridge Hinkle Joint Venture v. City of Albuquerque,* 123 N.M. 229, 938 P.2d 204 (1997), and reverse the Court of Appeals.

{2} Hinkle is the owner of a large tract of land zoned C–2 under the Albuquerque Zoning Code. *See* Albuquerque, N.M., Comprehensive City Zoning Code § 7–14–22 (1991) [hereinafter Zoning Code]. In 1991, he sought to improve a portion of the property by building a miniature golf course and arcade with go-carts and bumper boats. The Zoning Enforcement Officer (ZEO) ruled that the planned go-carts and bumper-boats were an appropriate conditional use of the property. The ruling was upheld by the Environmental Planning Commission, but the City reversed.

{3} The ordinance in issue is Section 7–14–22.B.13 of the Zoning Code which in relevant part allows as a conditional use in a C–2 zone "[o]utside storage or activity, except as specifically made a permissive use." Hinkle's argument is that the quoted words mean in his words "outside storage or other outside activity," and therefore go-carts and bumper-boats are in fact conditional uses. The City, offering its own paraphrase, argues that the words mean "outside storage or activity related to outside storage," so that the activities in question are not conditional uses. The Court of Appeals reasoned that the City had never issued an interpretation that was inconsistent with the interpretation it now urges, and that deference should be

accorded those who are politically accountable for enacting the ordinance. We granted certiorari on the issue: Did the Court of Appeals err in deferring to the City's interpretation of the Zoning Code? We hold that it did and therefore reverse with directions that the conditional uses sought by Hinkle be granted.

{4} "In construing municipal ordinances or county zoning ordinances ... the same rules of construction are used as when construing statutes of the legislature[,]" *Burroughs v. Board of County Comm'rs,* 88 N.M. 303, 306, 540 P.2d 233, 236 (1975), and "[c]ertainly, where the question is simply one of construction, the courts may pass upon it as an issue 'solely of law.' " *Pan American Petroleum Corp. v. El Paso Natural Gas Co.,* 77 N.M. 481, 487, 424 P.2d 397, 401 (1966) (quoting *Great N. Ry. v. Merchants' Elevator Co.,* 259 U.S. 285, 291, 42 S.Ct. 477, 66 L.Ed. 943 (1922)); *see also Mayberry v. Town of Old Orchard Beach,* 599 A.2d 1153, 1154 (Me.1991) (interpretation of zoning ordinance a question of law for the court); *Conforti v. City of Manchester,* 141 N.H. 78, 677 A.2d 147, 149 (N.H.1996) (same); *Kaiser v. Western R/C Flyers, Inc.,* 239 Neb. 624, 477 N.W.2d 557, 560 (Neb.1991) (same). Here, three rules or tools of statutory construction are relevant.

{5} The first rule is that the "plain language of a statute is the primary indicator of legislative intent." *General Motors Acceptance Corp. v. Anaya,* 103 N.M. 72, 76, 703 P.2d 169, 173 (1985). Courts are to "give the words used in the statute their ordinary meaning unless the legislature indicates a different intent ." *State ex rel. Klineline v. Blackhurst,* 106 N.M. 732, 735, 749 P.2d 1111, 1114 (1988). The court "will not read into a statute or ordinance language which is not there, particularly if it makes sense as written." *Burroughs,* 88 N.M. at 306, 540 P.2d at 236. The second rule is to "give persuasive weight to long-standing administrative constructions of statutes by the agency charged with administering them." *TBCH, Inc. v. City of Albuquerque,* 117 N.M. 569, 572, 874 P.2d 30, 33 (Ct.App.1994); *see Molycorp, Inc. v. State Corp. Comm'n,* 95 N.M.

613, 614, 624 P.2d 1010, 1011 (1981). The third rule dictates that where several sections of a statute are involved, they must be read together so that all parts are given effect. This includes amendments. *Methola v. County of Eddy*, 95 N.M. 329, 333, 622 P.2d 234, 238 (1980).

{6} Employing these guides to statutory construction, we analyze the ordinance in question, and the intent of those who enacted it. The plain meaning of the words "outside storage or activity" is that "outside" modifies both "storage" and "activity." Without a legislative indication to the contrary the word "storage" does not modify the word "activity" according to a plain reading of the phrase. In fact, use of the word "or" indicates the intent to distinguish "storage" from other subjects. "[Z]oning regulations should not be extended by construction beyond the fair import of their language and they cannot be construed to include by implication that which is not clearly within their express terms." 8 Eugene McQuillin, *The Law of Municipal Corporations*, § 25.71 (3d ed.1991). Further, there is no suggestion that the words in the ordinance are ambiguous or that they should be read with some kind of reasonably differing emphasis. We decline to insert words in the ordinance or depart from its common sense meaning. At this level, therefore, deference to the City's interpretation is not in order.

{7} The second rule of construction mentioned above relates specifically to what deference should be accorded to the City's interpretation of its own ordinance. As noted above, persuasive weight is to be given the long-standing construction of ordinances by the agency. However, it appears that the City was not aware of the construction being given the ordinance by the ZEO over a period of about sixteen years. The City never construed this ordinance until this case was filed. In its findings, the City relies mostly on textual comparisons to support its interpretation as to what the drafters of the Code intended. However the City also notes that the ZEO, the person designated by the Zoning Code to enforce the Code and issue declaratory rulings as to its applicability, has previously allowed non-storage outside activi-

ties in the C–2 zone to continue if they have received conditional use approvals. The Zoning Hearing Examiner (ZHE), the person who approves or denies a conditional use application, has also proceeded according to this understanding. These activities included outside retail and outside display, and in one case included go-carts and in two cases included water slides. It thus appears, not only that there is no longstanding basis for according weight to the present construction by the City, but that the construction by zoning officials has been to allow outside activities under the ordinance, if the applicants receive conditional use approvals. In addition, in 1985, the Zoning Procedures Manual was published as a supplement to the Zoning Code and specifically instructed that any outside activity could be proposed under the same section in question here. *See* Albuquerque, N.M., *Zoning Procedures Manual: A Supplement To the Comprehensive City Zoning Code and Section Procedures in General* (3d ed.1985).

{8} We also note that in 1993, Section 7–14–22.B.13 of the Zoning Code was amended by replacing the term "outside activity" with "outdoor activity," and using that term to clearly indicate that its meaning was not limited to "storage activity." The amended section reads in relevant part:

13. Outdoor storage or activity, except as specifically listed as a permissive or conditional use in this section and as further provided below:

. . .

(b) Combinations of uses, some or all of which are outdoor uses, which interact to create a more intense use, operating as one coordinated enterprise or attraction are not normally appropriate for approval as conditional uses under this paragraph (b), being more properly controlled as SU–1 zone special uses.

(c) Outdoor uses which would impact their environs with appearance, light, noise, odor, or similar environmental problems likely to be unpleasant to neighboring premises and uses shall not be approved.

Hinkle argues that if, as the City now contends, outside activities were always intended

to be limited to storage activities, the "combination of uses, some or all of which are outdoor uses" and the "one coordinated enterprise or attraction" language would make no sense, because obviously more than one kind of outdoor activity is contemplated thereby. We agree and we are persuaded that it was the intent of the drafters that Section 7–14–22.B.13 should not be limited to storage activities.

{9}  A useful perspective of what was intended is afforded by the *Conforti* case, 677 A.2d at 149 and its discussion of "administrative gloss":

> The doctrine of administrative gloss is a rule of statutory construction ... An administrative gloss is placed on an ambiguous clause of a zoning ordinance when those responsible for its implementation interpret the clause in a consistent manner and apply it to similarly situated applicants over a period of years without legislative interference. *If an administrative gloss is indeed found to have been placed on a clause, the municipality may not change such a de facto policy, in the absence of legislative action, because to do so would presumably violate legislative intent .*

(quoting *Nash Family Inv. Properties v. Town of Hudson*, 139 N.H. 595, 660 A.2d 1102, 1108 (N.H.1995)) (Emphasis added). In this case, the prior construction given to the ordinance by zoning officials and the publication of the supplement to the Zoning Code constituted a *de facto* policy which the City sought to change non-legislatively. We adopt the reasoning of the New Hampshire Supreme Court in *Conforti* and hold this was an improper procedure. We do not believe that the mere fact that the City Council itself had never interpreted the section in question means that landowners could not justifiably rely on the interpretation it was being given by "those responsible for its implementation," i.e ., zoning agency officials. *See Conforti; see Miller v. City of Albuquerque*, 89 N.M. 503, 506, 554 P.2d 665, 668 (1976) (discussing "the desirable stability of zoning classifications upon which the property owner has a right to rely, since property may be purchased and sold or uses of the property

undertaken in reliance on existing classifications.")

{10}  The City argues that Hinkle's interpretation of "outside activity" is broader and more open than could have been reasonably intended by the drafters. It points to the intent section of the Code, Section 7–14–2.B, which provides, "Any use not designated a permissive or conditional use in a zone is specifically prohibited from that zone, except as otherwise provided herein." The City claims that this is equivalent to requiring ultimate affirmative specificity as to uses. We read the section as being neutral regarding how specific a use designation must be, but then requiring that any use not included therein be prohibited. To allow "outside storage or activity" was therefore consistent with legislative intent.

{11}  But the City also argues that the Zoning Code is required to list only specific activities and uses rather than to employ "open" categories. This argument ignores the fact that the City has previously included other open categories in the Code. For instance, Section 7–14–22.A.10 allows as a permissive use in the C–2 zone the "[r]etailing of any consumer product and provision of any customer, personal, or business service...." with exceptions. Also Section 7–14–26.B.4.e allows the manufacture of products not elsewhere listed. Thus "outside storage or activity" does not stand alone as being less specific and more open than other uses permitted by the Code.

{12}  We are also convinced that the language in the Code introducing the zone ("This zone provides suitable sites for commercial activities, and certain specified storage." Section 7–14–22) does not require that Section 7–14–22.B.13 be construed differently than we do in this opinion. The introductory language might have read, "this zone provides suitable sites for *specified commercial activities* and certain outside storage," but it did not, and does not operate alone or in combination with other sections of the Code to limit the commercial activities allowable under Section 7–14–22.B.13.

{13}  Lastly, the City Council found, and the City argues, that the interpretation we give to this ordinance today "allows a range

of limitless activities to be included and gives boundless discretion to the ZHE." The discretion of the ZHE is limited, however, by the Code in that a use must not be injurious to adjacent property, the neighborhood, or the community, Section 7–14–42.C.1, and by the oversight of the Board of Appeals and the City. *Hinkle I,* 119 N.M. at 32, 888 P.2d at 478. Perhaps, had the City's legislative oversight been more effective, this case would not be before us.

{14} In conclusion, an analysis of the zoning ordinance in question, in terms of its prior construction and its relationship to other sections of the Code, reveals no inconsistency with its plain meaning, i.e., that "outside storage or activity" means "outside storage or other outside activity." Therefore, deference to the contrary interpretation of the City was improper and the Court of Appeals is reversed.

{15}  **IT IS SO ORDERED.**

FRANCHINI, C.J., BACA and SERNA, JJ., concur.