Hillsborough-southern judicial district
No. 96-791

JOSEPH P. HURLEY

v.

TOWN OF HOLLIS

May 25, 1999

*Prunier, Lloyd & Leonard, P.A.*, of Nashua (*Gerald R. Prunier* on the brief and orally), for the intervenor, John Siergiewicz.

*McNeill & Taylor, P.A.*, of Dover (*Lynne M. Dennis* and *Malcolm R. McNeill, Jr.* on the brief, and *Mr. McNeill* orally), for the plaintiff.

*Drescher & Dokmo*, of Milford, for the defendant, joins in the intervenor's brief.

BRODERICK, J. The intervenor, John Siergiewicz, appeals an order of the Superior Court (*Arnold*, J.) reversing the Hollis Zoning Board's (board) grant of a special exception to "alter, expand or change" a nonconforming use pursuant to a Town of Hollis Zoning Ordinance. We affirm.

I

In 1953, Siergiewicz purchased property located on both sides of South Merrimack Road (road) in the town of Hollis (town). The property was conveyed by a single deed and described two forty-acre parcels, known as lots 43 and 44, which were separated by the road. Currently, lot 43 contains a large three-story barn and residence, and a smaller barn rests on lot 44.

In the 1950s, Siergiewicz established a machine tool business on his land, which was permitted in the property's then-existing industrial zone. In the 1960s, the town rezoned the district to its present residential/agricultural status, and Siergiewicz lawfully continued to operate his enterprise as a nonconforming use. *See Arsenault v. Keene*, 104 N.H. 356, 358-59, 187 A.2d 60, 62 (1962). Though the parties dispute whether, at the time the district was rezoned, Siergiewicz maintained his business on both lots, the record clearly shows that the large barn on lot 43 comprised the bulk of his operations. While the barn had a footprint of approximately 6,000 square feet, the three stories contained about 15,000 square feet which were used for business operations.

In 1992, Siergiewicz sought a variance from the board to relocate his business from lot 43 to a new facility to be constructed across the road on lot 44. The board denied his application because no hardship was demonstrated. Subsequently, the town amended its zoning ordinance "to allow a certain reasonable level of alteration, expansion or change to occur by special exception" to pre-existing nonconforming uses if certain factors were satisfied, despite lack of hardship (the amendment). HOLLIS ZONING ORDINANCE § XII (amended 1993).

Thereafter, in 1994, Siergiewicz sought a special exception under the amendment to construct an 18,200 square foot, single-story building on lot 44, along with a thirty-two space parking lot. He also sought to increase his work force from twelve to twenty-five employees. Siergiewicz proposed to build the facility with greater setbacks from the road and abutters' property lines than existed for

the barn on lot 43. The proposed facility would have the benefit of surrounding trees serving as a partial screen from adjacent residential property. The board granted his request with conditions not relevant to this appeal. The board treated lots 43 and 44 as a single parcel and found that the new construction and location would not significantly change the nature of the pre-existing nonconforming use or have a "substantially different effect on the neighborhood." The plaintiff, Joseph P. Hurley, an abutter to Siergiewicz's property, filed a motion for rehearing with the board, which was denied.

Hurley appealed the board's grant of the special exception to the superior court, which agreed with the board's determination that the new facility would not have a substantially different effect on the neighborhood because the proposed building would be buffered by trees, and would be further away from abutters and the road than the original building. The court concluded, however, that the new facility expanded the nonconforming use "well beyond that acceptable for a special exception" under State law, and reversed the board's decision. The court declined to address whether the board erred in treating the lots as a single parcel, reasoning that "the building cannot be moved to a different location on the same parcel" by special exception. This appeal followed.

## II

At the core of this case is the town's intent in amending its zoning ordinance to allow for "alteration, expansion or change" of nonconforming uses by special exception. Siergiewicz argues that the town intended to create "less restrictive zoning than the state's general case law [for nonconforming uses]," which, he argues, is allowed under the statutory scheme. *See* RSA 674:16 (1996 & Supp. 1998), :18 (1996). Consequently, he contends that the superior court erred as a matter of law when it failed to review the board's decision using the specific requirements for a special exception identified in the ordinance. Hurley contends, however, that when the town amended its zoning ordinance to allow for the "alteration, expansion or change" of nonconforming uses, it merely intended to provide a less stringent alternative to variances, *see* RSA 674:33, I(b) (1996) (amended 1998) (applicant must prove hardship to obtain variance), by codifying State law on the permissible expansion of nonconforming uses.

"Interpretation of a zoning ordinance is a question of law for this court," *Conforti v. City of Manchester,* 141 N.H. 78, 79, 677 A.2d 147, 149 (1996) (quotation and ellipsis omitted), which requires us to

determine "the intent of the enacting body," *Trottier v. City of Lebanon*, 117 N.H. 148, 150, 370 A.2d 275, 277 (1977). When, as here, key terms are not specifically defined in the ordinance, we review it in its entirety to determine the intended meaning. *See id.* When, however, plain and unambiguous language is not available to discern intent, we "look beyond [the language of] the ordinance itself for further indications of legislative intent." *Healey v. Town of New Durham*, 140 N.H. 232, 236, 665 A.2d 360, 365 (1995) (brackets omitted). When we do so, "[t]he entire record [underlying] the ballot question presented to the voters must be considered in ascertaining" voter intent at the time the ordinance was adopted. *Town of Derry v. Simonsen*, 117 N.H. 1010, 1015, 380 A.2d 1101, 1104 (1977); *see also* RSA 675:2, :3 (1996 & Supp. 1998). As part of this process, the board's construction of the ordinance "is neither conclusive nor binding, but is entitled to consideration." *Trottier*, 117 N.H. at 150, 370 A.2d at 277.

Section XII of the zoning ordinance permits the "[a]lteration, expansion or charge [*sic*] of a nonconforming use or structure" by special exception if, *inter alia*, "the proposed alteration, expansion or change will not change the nature and purpose of the original use," and "would involve no substantially different effect on the neighborhood." The ordinance, however, does not define the terms "alteration," "expansion," or "change." Rather, it expresses an intent "to allow for the *lawful continuance* of nonconforming uses, structures and lots, and to allow a certain *reasonable level* of alteration, expansion or change," without specifying whether the ordinance memorializes or deviates from that standard established by existing law. HOLLIS ZONING ORDINANCE § XII (emphasis added).

While the amendment itself is ambiguous on the permissible scope of "alteration," "expansion," or "change" of a nonconforming use, the record underlying its adoption is not. *Cf. Simonsen*, 117 N.H. at 1015, 380 A.2d at 1104 (reviewing history of zoning amendment). Prior to the amendment, the planning board expressed its concern to town counsel, William Drescher, that the zoning board was frequently forced to deny requests for "very slight change[s] in the character of the [nonconforming] use" due to the strict standards for achieving a variance. By letter dated April 19, 1990, Drescher advised the town's planning board about the permissible expansion of nonconforming uses and proposed a special exception standard consistent with State law that the town could adopt for reviewing "minor requests for changes to a non-conforming use."

■ At a January 12, 1993, planning board meeting, Drescher's letter was read aloud, and his proposed standard was discussed as "bring[ing] the Hollis ordinance more into line with the RSAs and case law." The town ultimately incorporated Drescher's proposal into the amendment. *See* RSA 675:2, :3. In fact, the planning board ballot question concerning the amendment explicitly represented to the voters that "[t]his proposal is in accordance with vested rights standards found in New Hampshire RSA 674:19 and case law." Accordingly, the town clearly intended the zoning amendment to codify, not deviate from, existing law concerning the expansion of nonconforming uses, and the superior court was correct to apply such recognized standard when reviewing the board's grant of the special exception.

## III

Having concluded that existing law concerning the expansion of nonconforming uses controls, we must next determine whether the superior court's decision to reverse the board's grant of a special exception "is unsupported by the evidence or is legally erroneous." *Belluscio v. Town of Westmoreland*, 139 N.H. 55, 56, 648 A.2d 211, 212 (1994).

■ It is established law that "[a] zoning ordinance does not apply to structures or uses of the property that existed at the time the ordinance was enacted." *Conforti*, 141 N.H. at 80-81, 677 A.2d at 149-50; *see also* RSA 674:19 (1996). Rather, the ordinance applies "to any alteration of a building for use for a purpose or in a manner which is substantially different from the use to which it was put before the alteration." RSA 674:19. In fact, the well established policy of zoning law "is to carefully limit the enlargement and extension of nonconforming uses," and, ultimately, to reduce them "to conformity as completely and rapidly as possible." *Conforti*, 141 N.H. at 81, 677 A.2d at 150; *see Flanagan v. Hollis*, 112 N.H. 222, 225, 293 A.2d 328, 330 (1972) (no absolute right to continue nonconforming use to eternity).

Whether a proposed use would be "a substantial change in the nature or purpose of the [pre-existing] nonconforming use turns on the facts and circumstances of the particular case." *Conforti*, 141 N.H. at 82, 677 A.2d at 150. In conducting this inquiry, we consider: (1) the extent the use in question reflects the nature and purpose of the prevailing nonconforming use; (2) whether the use at issue is merely a different manner of utilizing the same use or constitutes a use different in character, nature, and kind; and (3) whether the use

will have a substantially different effect on the neighborhood. *Id.* at 81, 677 A.2d at 150; *see New London Land Use Assoc. v. New London Zoning Board,* 130 N.H. 510, 517, 543 A.2d 1385, 1388 (1988). We are mindful that nonconforming uses cannot be substantially enlarged or expanded, but may only be altered "where the expansion is a natural activity, closely related to the manner in which a piece of property is used at the time of the enactment of the ordinance creating the nonconforming use." *New London Land Use Assoc.,* 130 N.H. at 516, 543 A.2d at 1388; *see Conforti,* 141 N.H. at 81, 677 A.2d at 150 (permissible scope of the nonconforming use dictated by property's use at time ordinance enacted that created nonconforming use). Further, "[a]ny expansion of a nonconforming use must be evaluated in the context of the zone in which it is located." *Grey Rocks Land Trust v. Town of Hebron,* 136 N.H. 239, 245, 614 A.2d 1048, 1051 (1992).

The nonconforming use in this case was created in the 1960s when Siergiewicz was using either one or both lots as a machine tool shop, with the three-story barn on lot 43 serving as the primary location. Siergiewicz's proposal anticipates relocating the business into a new building that is plainly industrial in nature, in contrast to the barn, which is consistent with the residential/agricultural zone. Further, the industrial building's footprint would be tripled and accompanied by a new and expanded parking lot. *See New London Land Use Assoc.,* 130 N.H. at 513-14, 543 A.2d at 1387 (reversing grant of special exception because landowner's proposal would substantially change and unnaturally expand nonconforming use by replacing existing units with clustered units, increasing living, storage, garage, and common space by twofold, and constructing new road networks and entryway). Despite the proposal's overall improved effect resulting from the creation of greater setbacks from abutters, off-street parking, and the use of a tree buffer to shelter the industrial building from the street and abutters, we cannot conclude that the proposal is consistent with, or a natural expansion of, the original nonconforming use. *See id.* at 517, 543 A.2d at 1388.

While we have previously upheld an increase in the volume, intensity, or frequency of a nonconforming use that reflects the natural expansion and growth of trade and does not substantially change the use's effect on the neighborhood, we have done so only within the confines of the existing structure. *See Town of Hampton v. Brust,* 122 N.H. 463, 469, 446 A.2d 458, 461 (1982) (permitting increase of arcade machines within existing structure); *cf. Devaney v. Town of Windham,* 132 N.H. 302, 305-06, 564 A.2d 454, 456 (1989) (prohibiting landowner's addition of second story that increased

volume of premises and brought structure closer to property lines as a natural expansion of nonconforming use). "We have never permitted an expansion of a nonconforming use that involved more than the internal expansion of a business within a pre-existing structure," *Grey Rocks Land Trust*, 136 N.H. at 244, 614 A.2d at 1051, and we will not do so here. *Cf. id.* (noting permissive expansion of existing structure where no abutters objected and addition would affect area less than use permissible under zoning ordinance).

■ Accordingly, we agree with the superior court that the board's grant of a special exception was erroneous as a matter of law and must be reversed. Our decision is not affected by whether the property is a consolidated parcel or two separate lots; thus, we need not address Siergiewicz's argument concerning this issue.

*Affirmed.*

HORTON, J., with whom BROCK, C.J., joined, dissented; the others concurred.

HORTON, J., dissenting: While the majority correctly states the law governing expansion of nonconforming uses, I believe that the appropriate analysis in this case focuses on the law governing special exceptions. Because I would accordingly reverse the trial court's order, I respectfully dissent.

"A special exception is a use permitted upon certain conditions as set forth in a town's zoning ordinance." *New London Land Use Assoc. v. New London Zoning Board*, 130 N.H. 510, 517, 543 A.2d 1385, 1388 (1988). To be entitled to a special exception, the applicant must present to the zoning board sufficient evidence to support a finding that each requirement or condition for the exception, as listed in the ordinance, has been met. *See Jensen's, Inc. v. City of Dover*, 130 N.H. 761, 765, 547 A.2d 277, 280 (1988). If the conditions are met, the board must grant the special exception. *Cormier v. Town of Danville*, 142 N.H. 775, 777-78, 710 A.2d 401, 403 (1998).

Technically, "special exception" is a misnomer. *See* 15 P. LOUGHLIN, NEW HAMPSHIRE PRACTICE, LAND USE, PLANNING AND ZONING § 23.01, at 250 (2d ed. 1993). When approved, it is not an exception to the ordinance but rather a permitted use under the terms of the ordinance. *See Geiss v. Bourassa*, 140 N.H. 629, 632, 670 A.2d 1038, 1040 (1996); *see also* 15 LOUGHLIN, *supra* at 250. Consequently, while there is a long-standing policy of zoning to limit the expansion of nonconforming uses because their expansion tends to thwart the purposes of zoning, *cf. Peabody v. Town of Windham*, 142 N.H. 488, 493, 703 A.2d 886, 889 (1997), special exceptions fall

outside the realm of such policy concerns. Special exceptions circumscribe a more flexible permission for use of property than variances and nonconforming uses. *See Geiss*, 140 N.H. at 632, 670 A.2d at 1040. Thus, in reviewing the zoning board's decision to grant or deny a special exception, the trial court may not apply the more stringent standard of review applicable to variances or nonconforming uses. *See id.* Nor should the more stringent nonconforming use standard be used to discern the intent of the voters enacting the zoning ordinance. Property owners in Hollis, subject to the unamended ordinance, were able to avail themselves of the right to expand nonconforming uses within the standards established by our case law, all without approval of the zoning board. The amendment had to do more than codify our existing case law. It provided a new standard for change or expansion of nonconforming uses and vested jurisdiction in the zoning board to apply this standard.

Here, section XII of the Hollis Zoning Ordinance provided for a "reasonable level of alteration, expansion or change to occur by special exception . . . ." To be eligible for a special exception permitting alteration of use, section XII required the applicant to demonstrate, in relevant part, that: "(a) the proposed alteration, expansion or charge [*sic*] will not change the nature and purpose of the original use, and (b) the proposed alteration, expansion or change would involve no substantially different effect on the neighborhood." Siergiewicz properly applied for a special exception. After a hearing, the board found that all of the conditions required by section XII had been met and accordingly granted the exception.

Words in a zoning ordinance are given their plain meaning if possible. *See Johnston v. Town of Exeter*, 121 N.H. 938, 943, 436 A.2d 1147, 1151 (1981). The ordinance in this case plainly provides for "alteration, expansion or [change]" of nonconforming use *by special exception*. In other words, if the enumerated conditions are met, the applicant would be entitled to an alteration, expansion, or change of an otherwise nonconforming use, not as an exception to the ordinance, but as a permitted use free of the restrictions applicable to expansions of bare nonconforming uses. The special exception, if granted, must conform only to the requirements of the zoning ordinance and any additional reasonable conditions placed on it by the board. *Cf. Geiss*, 140 N.H. at 632, 670 A.2d at 1040.

In reviewing the board's decision, the trial court is limited in its determination to whether the board's decision was unlawful or unreasonable, on a balance of the probabilities. *See Peabody*, 142 N.H. at 492, 703 A.2d at 888. Where the board decision concerns a grant of a special exception, the trial court must consider whether

there was sufficient evidence before the board to support a favorable finding on each of the conditions under the ordinance. *See Barrington Owners' Assoc. v. Town of Barrington*, 121 N.H. 627, 630, 433 A.2d 1266, 1268 (1981). The trial court must be mindful that factual findings of a zoning board are *prima facie* lawful and reasonable. *See Peabody*, 142 N.H. at 492, 703 A.2d at 888.

In this case, the board found that the new facility would not represent any change in the nature or purpose of the original use. Siergiewicz presented testimony at the hearing that the proposed new facility would merely continue his existing use of the original building as a precision metal machinery operation. The board further determined, and the trial court agreed, that the new building would have no substantially different effect on the neighborhood. Evidence at the board hearing, which the trial court confirmed with a view, showed that trees surrounding the new building would serve as a partial screen from adjacent residential property and that the new building would be located off the street, away from abutters. I would find that there is sufficient evidence on the record to support the board's conclusion that each of the conditions for a special exception had been met and therefore the grant of a special exception was proper. *Cf. Jensen's, Inc.*, 130 N.H. at 765, 547 A.2d at 280 (even absent trial court's finding, if any of board's reasons for denial of special exception supports its decision, we will uphold denial).

Here, the trial court erred by applying an excessively stringent review, properly applied to review of expansion of nonconforming uses, but not to special exceptions. The question before the trial court was not whether Siergiewicz's new facility expanded the nonconforming use beyond due limits, but whether there was sufficient evidence, on the balance of the probabilities, to support the board's determination that each of the requirements for the special exception had been met. A special exception is simply not subject to any limitation aside from the statute that creates it and reasonable restrictions imposed by the board. Neither exists here to warrant the trial court's determination that the use was "well beyond that acceptable for a special exception." Because I would hold that the trial court erred as a matter of law in applying an erroneous standard of review and that there is sufficient evidence to support the board's decision, I would reverse the trial court's decision and sustain the board's grant of a special exception.

BROCK, C.J., joins in the dissent.