2004-NMCA-053

90 P.3d 534

**Daniel O. GAMBOA and Paula J. Gamboa, Plaintiffs–Appellees,**

v.

**Sal URENA d/b/a Urena Custom Cabinets, Defendant–Appellant.**

No. 23,104.

Court of Appeals of New Mexico.

March 4, 2004.

Certiorari Denied, No. 28,554, May 11, 2004.

Henry F. Narvaez, Ernestina R. Cruz, Narvaez Law Firm, P.A., Albuquerque, NM, for Appellees.

Shane A. English, Keithly & English, P.C., Anthony, NM, for Appellant.

*OPINION*

FRY, Judge.

{1} In this case we consider the reach of the Construction Industries Licensing Act (CILA), NMSA 1978, §§ 60–13–1 to –59 (1967, as amended through 2003), which precludes an unlicensed contractor from seeking compensation for construction work that can only be performed by a licensed contractor. Defendant Sal Urena appeals from partial summary judgment voiding his materialman's lien and dismissing his claim for compensation related to the fabrication and installation of cabinets and countertops in the home of Plaintiffs Daniel and Paula Gamboa. Under the circumstances of this case, we hold that permitting Urena to assert his claims and lien would violate the strong public policy articulated in the CILA and the case law interpreting it. We therefore affirm the district court's partial summary judgment.

## BACKGROUND

{2} The Gamboas hired Urena, an unlicensed contractor, to make custom cabinets and countertops for their new home. At the same time, according to the Gamboas, Urena also agreed to install the completed cabinets and countertops. Urena and the Gamboas signed a written agreement (the contract) providing: "We, Sal Urena, Daniel O. Gamboa, Paula J. Gamboa and [the general contractor] do agree that cabinets, carvings, and countertops will be produced and installed by Urena's Custom Cabinets." The contract then went on to list each cabinet and countertop with a corresponding price. Following the list, the contract stated, "Includes: Doors, cabinets, installation and hardware[.]"

{3} Despite the written contract, Urena has a different view of the agreement. While he agrees that he signed the contract, he contends that he and the Gamboas initially agreed only that he would produce the cabinets and countertops; there was no mention of installation. He claims he memorialized this agreement in a draft proposal listing the same cabinets, countertops, and prices listed in the contract. However, the proposal is silent on the question of whether the price included installation. Later, according to Urena, the Gamboas asked Urena if he would install the cabinets and countertops and he told them he could not because he was not a licensed contractor. The Gamboas persisted in urging Urena to install the items; there is no dispute that Urena ultimately agreed to and did install the cabinets and countertops. However, he maintains that he did not charge the Gamboas anything for the installation. He claims he charged only for the manufacture of the cabinets and countertops at the prices listed in his original proposal.

{4} The Gamboas contend Urena never completed the work. Although the Gamboas had paid Urena $46,727.21, Urena claims the Gamboas still owed him $18,666.11 for work he completed. Because he believed the Gamboas still owed him money, Urena filed a lien on the Gamboas' house. The Gamboas then sued Urena seeking cancellation of the lien, damages, and other relief. Urena filed a counterclaim for breach of contract and foreclosure of his lien.

{5} The Gamboas filed a motion for partial summary judgment, arguing that the CILA required Urena to be a licensed contractor in order to perform the work he had agreed to do. Consequently, they argued, because Urena was not a licensed contractor, his lien was invalid. Urena responded that the CILA does not require a supplier of materials to be licensed. Because he sought payment only for supplying the cabinets and countertops and did not charge for installation, he claimed it was not necessary for him to be licensed.

{6} The district court granted partial summary judgment to the Gamboas, holding that

Urena contracted without a license in violation of the CILA and thus, that Urena's lien was void *ab initio*. The district court dismissed Urena's counterclaim with prejudice and, pursuant to Rule 1–054(B)(1) NMRA 2004, found there was no just reason for delay in entering a final order on the issues of the validity of Urena's lien and the viability of Urena's counterclaim. Urena appealed.

## DISCUSSION

{7} Summary judgment is properly granted when there are no genuine issues of material fact. *Cuevas v. State Farm Mut. Auto. Ins. Co.*, 2001–NMCA–038, ¶ 6, 130 N.M. 539, 28 P.3d 527. We review the application of the law to the undisputed facts de novo. *Id.*

■ {8} The district court concluded that Urena had contracted without a license in violation of the CILA, which provides:

A. No contractor shall act as agent or bring or maintain any action in any court of the state for the collection of compensation for the performance of any act for which a license is required by the Construction Industries Licensing Act ... without alleging and proving that such contractor was a duly licensed contractor at the time the alleged cause of action arose.

B. Any contractor operating without a license as required by the Construction Industries Licensing Act shall have no right to file or claim any mechanic's lien as now provided by law.

§ 60–13–30.

A "contractor" is

any person who undertakes, offers to undertake by bid or other means or purports to have the capacity to undertake, by himself or through others, contracting. Contracting includes ... constructing, altering, repairing, installing or demolishing any:

...

(2) building, stadium or other structure[.]

§ 60–13–3(A)(2).

{9} Urena does not dispute that under the CILA, any contractor installing the Gamboas' cabinets had to have a license. However, he claims that because he did not charge

for the installation, Section 60–13–30 does not prohibit his lien and claim against the Gamboas for two reasons. First, he contends that Section 60–13–30(A) precludes only actions for "the collection of compensation" and he is not claiming compensation for installation. Second, he maintains that Section 60–13–3(D)(1) excludes from the definition of "contractor" "any person who merely furnishes materials or supplies at the site without fabricating them into, or consuming them in the performance of, the work of a contractor[.]" Thus, he argues, because he charged only for the fabrication of the cabinets and countertops and not for the installation, he is not a contractor and did not need a license.

{10} In order to assess Urena's arguments regarding the CILA, we first consider whether the parties' agreement contemplated installation of the cabinets and countertops as part of the agreed-upon price. Urena argues that the written contract he signed creates a fact issue because it is ambiguous in light of the surrounding circumstances. *See Mark V, Inc. v. Mellekas*, 114 N.M. 778, 781, 845 P.2d 1232, 1235 (1993) (stating that ambiguity of contract can only be determined by examining the circumstances surrounding the contract's making). In his view, while the contract seems to indicate that the prices charged included installation, the contract is also reasonably susceptible to the meaning he attributes to it-that the prices listed are for the fabrication of the cabinets and countertops, as noted in Urena's draft proposal, and that the installation would be performed at no charge. *See id.* (explaining that a contract is ambiguous if it "is reasonably and fairly susceptible of different constructions"). We need not address whether the contract is ambiguous because even if Urena's view of the agreement is correct, we hold that the agreement is unenforceable under the CILA, as explained below.

■ {11} Assuming, as Urena contends, that the parties agreed that Urena would install the cabinets and countertops at no charge, the question is whether the CILA bars his claim and lien. While Section 60–13–30(A) prohibits only actions "for the collection of compensation," we must consider

this section of the CILA together with the other sections of the CILA in order to give effect to the legislature's intent. *High Ridge Hinkle Joint Venture v. City of Albuquerque*, 1998–NMSC–050, ¶ 5, 126 N.M. 413, 970 P.2d 599 (explaining that when "several sections of a statute are involved, they must be read together so that all parts are given effect"). In addition, "in determining [legislative] intent we look to the language used and consider the statute's history and background." *Key v. Chrysler Motors Corp.*, 1996–NMSC–038, 121 N.M. 764, 768–69, 918 P.2d 350, 354–55.

{12} We first observe that the CILA not only prohibits an unlicensed contractor from filing an action for compensation, Section 60–13–30(A), it also provides that criminal penalties may be imposed on an unlicensed contractor. *See* § 60–13–52(A) (providing that contractor acting without a license is guilty of a misdemeanor punishable by imprisonment and/or fines). It is apparent that the legislature casts a harsh eye on contracting without a license.

{13} Our case law reinforces this view of the legislative intent underlying the CILA. In *Mascareñas v. Jaramillo*, 111 N.M. 410, 806 P.2d 59 (1991), our Supreme Court clarified the purpose of the CILA and established that the legislature intended to punish contractors who fail to obtain licenses. The Court stated:

> The object sought to be accomplished by the [CILA] is a healthy, ordered market in which consumers may contract with competent, reliable construction contractors who have passed the scrutiny of a licensing division. The wrong to be remedied is the exploitation of the public by incompetent and unscrupulous contractors who are unable or unwilling to obtain a license.

*Id.* at 413, 806 P.2d at 62. The Court went on to hold that an unlicensed contractor cannot retain payments received for construction work performed. *Id.* at 414, 806 P.2d at 63.

{14} Other cases highlight the legislature's complete intolerance of unlicensed contractors. In *Kaiser v. Thomson*, 55 N.M. 270, 272–74, 232 P.2d 142, 143–44 (1951), the Court held that a contract with an unlicensed contractor was void under the relevant version of the CILA, even if the property owners who hired the contractor knew he was unlicensed. In addition, if a contractor has no license when the construction contract is formed, it makes no difference if the contractor acquires a license in the course of performing the construction work; the contractor is still barred from recovery because "[t]he illegality inhering at the inception of such contracts taints them throughout and effectually bars enforcement." *Crawford v. Holcomb*, 57 N.M. 691, 695, 262 P.2d 782, 785 (1953) (internal quotation marks and citation omitted).

{15} Our case law thus establishes that contracts entered into by unlicensed contractors are contrary to public policy and unenforceable. *See Mascareñas*, 111 N.M. at 414, 806 P.2d at 63 (stating that, as a matter of public policy, a contractor may not retain payments for construction work performed without a license). An unlicensed contractor cannot recover any compensation for unlicensed work, even if the work was "expertly performed" and the consumer knew the contractor was unlicensed. *Id.* If a consumer has already paid an unlicensed contractor, the consumer may recover the amounts paid, again, even if the contractor's work was satisfactory. *Id.* Consequently, an unlicensed contractor may not raise as a defense the unjust enrichment of the consumer "because the Legislature in Section 60–13–30 necessarily authorized the unjust enrichment of the recipients of work performed by unlicensed contractors." *Triple B Corp. v. Brown & Root, Inc.*, 106 N.M. 99, 101, 739 P.2d 968, 971 (1987).

{16} With these formidable pronouncements in mind, we turn now to the question whether Urena should be able to recover for the fabrication of the Gamboas' cabinets and countertops in light of the fact that, under Urena's view of the agreement, he did not charge anything for installation. Under his legal theory, Urena is in effect asking this Court to excuse the construction work he performed without a license and exempt him from the requirements of the CILA. If we were to do so, we would encourage contractors to engage in creative contract drafting

whereby they attribute all charges to the cost of materials and supplies and charge nothing for labor. Allowing enforcement of such contracts would frustrate the intent of the CILA and would "permit unlicensed contractors to flourish and profit at the expense of the public." *Mascareñas*, 111 N.M. at 413, 806 P.2d at 62. Given that "[t]he public policy behind the licensing requirement of the [CILA] is so strong[,]" *id.* at 414, 806 P.2d at 63, we cannot agree with Urena's arguments.

{17} We recognize that our holding may seem harsh if we accept Urena's view of the parties' agreement. If he in fact agreed only to fabricate the cabinets and countertops and then succumbed to the Gamboas' pressure to install them, it seems unfair to deprive him of compensation for the fabrication. However, he does not dispute that he did agree to install and that installation required a contractor's license. Under these circumstances, "the public importance of discouraging such prohibited transactions outweighs equitable considerations of possible injustice as between the parties." *Eastland Fin. Servs. v. Mendoza*, 2002–NMCA–035, ¶ 8, 132 N.M. 24, 43 P.3d 375 (internal quotation marks and citation omitted).

{18} Urena primarily relies on two cases to support his argument that he should be able to recover for fabrication of the cabinets and countertops. Neither case persuades us. First, Urena points to *Lightsey v. Marshall*, 1999–NMCA–147, 128 N.M. 353, 992 P.2d 904, where this Court stated that "even if one performs services that fall within the [CILA's] definition of contracting, if the relief sought is not compensation for such services, the [CILA] permits relief." *Id.* ¶ 25. However, the context of this statement in *Lightsey* is different from the circumstances in the present case. In *Lightsey* the defendant contractor had engaged in a joint venture with the plaintiff to purchase investment property. The contractor constructed improvements to the property and, when the property sold, claimed entitlement to the money and "sweat equity" he had invested in the property. Here, Urena cannot claim a similar interest.

{19} Second, Urena cites *Institute for Essential Housing, Inc. v. Keith*, 76 N.M. 492, 416 P.2d 157 (1966), where the Supreme Court noted that the CILA "only prohibits an unlicensed contractor from bringing or maintaining an action for the collection of compensation for construction work." *Id.*, at 494, 416 P.2d at 158 (internal quotation marks omitted). In that case the contractor was seeking to recover amounts loaned to the consumer under a promissory note; the lawsuit had nothing to do with the recovery of compensation for construction work.

{20} We also reject Urena's argument that the Gamboas' fraud, unclean hands, failure of consideration, laches, and waiver equitably estop them from asserting the bar of the CILA. In support of this contention, Urena points only to the Gamboas' knowledge that he did not have a contractor's license. This argument was rejected in *Mascareñas*, 111 N.M. at 414, 806 P.2d at 63, where the Court held that the contractor had to refund the consumer's payments for satisfactorily completed construction work, despite the fact that "the consumer ha[d] knowledge that the contractor [was] unlicensed."

## CONCLUSION

{21} For the foregoing reasons, we affirm the district court's partial summary judgment and remand for proceedings consistent with this opinion.

{22} **IT IS SO ORDERED.**

WE CONCUR: CELIA FOY CASTILLO and RODERICK T. KENNEDY, Judges.