**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2009-NMCA-047**

**Filing Date: March 25, 200**

**Docket No. 27,027**

**JESSIE ROMERO,**

      **Plaintiff-Appellant,**

**v.**

**ROBERT PARKER and**
**SIVAD ENTERPRISES, LLC,**

      **Defendants-Appellees,**

**and**

**SIVAD ENTERPRISES, LLC,**

      **Counterclaimant-Appellee,**

**v.**

**JESSIE ROMERO,**

      **Counterdefendant-Appellant.**


**APPEAL FROM THE DISTRICT COURT OF SANTA FE COUNTY**
**James A. Hall, District Judge**

J. Ronald Boyd
Santa Fe, NM

for Appellant

Mary E. Walta, P.C.
Mary E. Walta
Santa Fe, NM

for Appellees

**OPINION**

**WECHSLER, Judge.**

**{1}**　　Plaintiff Jessie Romero (Romero) appeals from the district court's summary judgment in favor of Defendants Robert Parker (Parker) and Sivad Enterprises, LLC (Sivad). We address whether the Construction Industries Licensing Act (the CILA), NMSA 1978, §§ 60-13-1 to -59 (1967, as amended through 2007), which precludes an unlicensed contractor from seeking compensation for construction work that can only be performed by a licensed contractor, also bars an unlicensed subcontractor from recovering compensation for construction work from the general contractor. We hold that it does. We also address whether the CILA bars a general contractor who did not act responsibly in hiring an unlicensed subcontractor from recovering compensation already paid to the unlicensed subcontractor, and, again, we hold that it does. Additionally, we hold that equitable principles do not apply in this situation. We further hold that Parker was not an agent for an undisclosed principal, Sivad, and is thus not personally liable to Romero. We affirm in part and reverse in part.

**BACKGROUND**

**{2}**　　Romero, who is in the business of construction, performed work for Sivad, operating a backhoe, laying stone, and performing other masonry work without a contractor's license. Sivad is a general contractor. Parker was Sivad's agent for contracts and construction projects, and Steve Davis (Davis) was Sivad's member/manager. Romero dealt primarily with Parker and Davis and claims to have not known about Sivad until after a conflict arose. Although Romero claims that he worked for Parker, and much of Romero's dealings were with Parker, he, in fact, worked for Sivad, and Parker was Sivad's agent. Romero did not bid on any work, and there were no written contracts. Sivad had Romero working on construction projects at five residences (the construction projects) at once, each with several assignments. Romero prepared invoices for payment, which show a variety of billing methods including per hour, per load, per square foot, and per item. Romero was paid for a portion of his work and filed a complaint for breach of the construction contracts for the remainder. Romero alleges that he fully performed all work under the contracts, demanded payment, and was refused. Defendants filed a motion for summary judgment, claiming that Romero could not recover compensation under the complaint because he was operating as an unlicensed contractor contrary to the CILA requirements. Romero argued that genuine issues of material fact still existed and that his compensation claims were not barred because Parker knew that Romero was not licensed and nevertheless allowed Romero to continue work with reasonable expectation that he would be fairly compensated at the conclusion of each job assignment. Parker denies knowing that Romero was not licensed at the time the work was assigned.

2

**{3}**     The district court granted Defendants' motion for summary judgment on four of the five construction projects, finding that some portion of Romero's work at those construction projects required a contractor's license, that he did not have one, and that, therefore, he was barred from recovering compensation pursuant to the CILA and *Gamboa v. Urena*, 2004-NMCA-053, 135 N.M. 515, 90 P.3d 534. In response to Romero's motion to amend the complaint to add an equitable estoppel claim, the district court denied the motion on the basis that *Gamboa* made the amendment "futile." The order was certified for interlocutory appeal, and this Court denied the application.

**{4}**     Sivad then asserted a counterclaim for a refund of the money that Sivad had already paid Romero for his work on the construction projects. Romero filed a second motion to amend the complaint to add a claim of damages against Parker for misrepresentation, claiming that Parker falsely represented himself, not Sivad, as the general contractor. Thereafter, Sivad filed a motion for summary judgment on its counterclaim, arguing that the CILA, *Gamboa*, and *Mascarenas v. Jaramillo*, 111 N.M. 410, 806 P.2d 59 (1991), mandated that Sivad receive a full refund of compensation already paid to Romero. The district court denied Romero's second motion to amend the complaint, again on the basis that "[t]he proposed amendment of the Complaint is futile under New Mexico law." Sivad's motion for summary judgment on its counterclaim was stricken without prejudice as untimely filed under the scheduling order.

**{5}**     Romero's answer to Sivad's counterclaim asserted as affirmative defenses essentially the same equitable claims he had sought to bring by way of his first and second motions to amend the complaint. Romero alleged that Parker knew Romero was unlicensed, that Parker had misrepresented to Romero that Romero did not need a contractor's license to work on the construction projects, and that Parker had assured Romero that he would be paid regardless. Romero also asserted that Sivad was not entitled to a refund of amounts already paid to Romero under its counterclaim because Sivad is not the "innocent consumer" protected by the CILA and applicable case law. Romero added that "[t]he equitable doctrines of unclean hands, unjust enrichment, estoppel and implied covenant . . . should apply herein." Although the district court had previously stricken Sivad's motion for summary judgment as untimely, it apparently granted a hearing on the motion at a later date. As a result of that hearing, the district court granted in part and denied in part Sivad's motion for summary judgment on the counterclaim, ruling that, under New Mexico law, Sivad was entitled to be reimbursed for compensation already paid to Romero, an unlicensed contractor.

**{6}**     In its final judgment, the district court adopted Defendants' proposed findings and conclusions and noted the summary judgments already granted against the complaint and in favor of the counterclaim. The district court ruled that Parker, as Sivad's agent, was not individually liable to Romero and required Romero to reimburse Sivad for work on four of the five construction projects, minus the amount owed to Romero for the fifth construction project, at which no unlicensed work was completed by Romero. Romero appeals.

**STANDARD OF REVIEW**

**{7}** "Summary judgment is appropriate [when] there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law." *Montgomery v. Lomos Altos, Inc.*, 2007-NMSC-002, ¶ 16, 141 N.M. 21, 150 P.3d 971 (internal quotation marks and citation omitted). "We review the [district court's] application of the law to the undisputed facts de novo." *Gamboa*, 2004-NMCA-053, ¶ 7.

**RECOVERY BY AN UNLICENSED CONTRACTOR**

**{8}** The New Mexico Legislature "casts a harsh eye on contracting without a license." *Id.* ¶ 12; *see also Mascarenas*, 111 N.M. at 414, 806 P.2d at 63 (stating that unlicensed contractors may not retain payments as a matter of public policy, even if the consumer had knowledge that the contractor was unlicensed). Section 60-13-30(A) states that "[n]o contractor shall . . . bring or maintain any action . . . for the collection of compensation for the performance of any act for which a license is required . . . without alleging and proving that such contractor was a duly licensed contractor at the time the alleged cause of action arose." Contracting includes "constructing, altering, repairing, installing or demolishing any . . . building, stadium or other structure; . . . leveling or clearing land; [or] excavating earth." Section 60-13-3(A). Thus, the express language of Section 60-13-30(A) and the public policy behind its mandate "to protect the public from incompetent and irresponsible builders," *Peck v. Ives*, 84 N.M. 62, 66, 499 P.2d 684, 688 (1972), operate to bar unlicensed contractors' suits for compensation, "even when they seek compensation for construction work fully and satisfactorily performed." *Triple B Corp. v. Brown & Root, Inc.*, 106 N.M. 99, 101, 739 P.2d 968, 970 (1987). *Mascarenas* further explained that "[t]he public policy behind the licensing requirement of the [CILA] is so strong that the element of consumer knowledge is of no consequence in our decision." *Mascarenas*, 111 N.M. at 414, 806 P.2d at 63. The definition of "contractor" includes subcontractors. Section 60-13-3(B).

**{9}** Romero did not have a contractor's license at any time during his performance of any of the construction work on all five construction projects, and some of his work required a license. Romero argues that he should be entitled to payment on the work that he performed that did not require a license because he was paid wages on some assignments and because he claims to have contracted with Parker separately for each job assignment, some of which did not require a license. Romero further argues that the district court erred in its initial granting of summary judgment for Defendants on four of the five properties when a material fact—how many sites required a license—was disputed.

**{10}** First, we address Romero's contention that he worked only for wages. The CILA does exempt from its provisions "an individual who works only for wages." Section 60-13-3(D)(13). Therefore, if Romero worked only for wages, he would not be considered an independent contractor, subject to the CILA. The CILA's definition of "wages" is "compensation paid to an individual by an employer from which taxes are required to be withheld by federal and state law." Section 60-13-2(I). For Romero to have received wages,

4

he must be deemed Sivad's employee and not an independent contractor. The CILA states that individuals who provide labor or services to a contractor for compensation are employees of the contractor unless they meet all of the standards "indicative of an independent contractor." Section 60-13-3.1(A). Those standards are as follows: (1) the individual is "free from direction and control over the means and manner of providing the labor or services"; (2) the individual is responsible for obtaining his own business registrations or licenses; (3) the individual supplies his own tools and equipment; (4) the individual "has the authority to hire and fire employees"; (5) payment to the individual is made "upon completion of the performance of specific portions of a project or . . . on the basis of a periodic retainer"; and (6) the individual "represents to the public that the labor or services are to be provided by an independently established business." *Id.*

**{11}** The facts of this case do not support a conclusion that Romero was Sivad's employee. Although Romero admitted at trial that he was not an employee, he argued that his situation was unique. However, Romero operated as a masonry contractor with his own equipment and had his own employees who assisted him in the masonry and excavation work. His invoices to Sivad for incomplete work were under the name JR Stone Masonry. These facts satisfy a majority of the standards listed above—that Romero was responsible for his own registration and licensing, that he had his own tools and equipment, that he had his own employees, and that he represented to the public that he was a business. *See id.*

**{12}** Romero also claims that he should be treated as an employee, not an independent contractor, because he was assigned work based on individual job assignments and because he billed for certain work on an hourly basis. Although it may be true that Romero was assigned specific jobs within each construction project site and that some of his invoices billed hourly, ultimately he was paid after each assignment was completed. As stated above, the fifth standard that would result in characterization as an independent contractor is that payment to the individual is made "upon completion of the performance of specific portions of a project or . . . on the basis of a periodic retainer." *Id.* Regardless of how Romero showed his work on his invoices, it is undisputed that he was paid "upon completion of the performance of specific portions of a project," satisfying the fifth standard of an independent contractor. *Id.* Moreover, the CILA specifies in its definition of a contractor that an individual may be exempted from the act if he receives wages and "no other form of compensation." Section 60-13-3(D)(10), (12); *see also* § 60-13-3(D)(13) (specifying that an individual may be exempt if he works only for wages); § 60-13-3(D)(14)(a) (specifying that an individual may be exempt if "the work is not part of a larger . . . operation undertaken by the same individual"). Romero was paid for work in various forms, not only wages, and his work was part of a larger operation undertaken by him and his employees.

**{13}** Additionally, Romero provided no evidence that Sivad or its agent Parker directed or controlled the details of the masonry and excavation work that Romero provided at the construction sites, the first standard in the list establishing status as an independent contractor. *See* § 60-13-3.1(A). Finally, Romero admitted to presenting no evidence that Sivad withheld applicable employee-related state and federal taxes from Romero's invoice

5

amounts or that Sivad contemplated including Romero and his employees under Sivad's workers' compensation insurance coverage. *See* § 60-13-2(I) (including in its definition of "wages" that taxes are withheld by federal and state law). The district court correctly found that Romero did not receive only wages for compensation. As such, in consideration with the other factors discussed, he should be treated as an independent contractor under the CILA.

**{14}** Second, we address Romero's claim that he was assigned work based on individual job assignments and that, therefore, he should be allowed to recover compensation for assignments that did not require a license. Romero's argument appears to rely on the CILA provision that exempts from the definition of contractor "any person who merely furnishes materials or supplies at the site without fabricating them into, or consuming them in the performance of, the work of a contractor." Section 60-13-3(D)(1). But Romero did not simply deliver material or supplies to the construction sites; he excavated the sites and fabricated the stone and other supplies into walls, patios, and other masonry structures for which a contractor's license is required. *See* §§ 60-13-3(A), 60-13-12.

**{15}** We also reject Romero's claim that there is a factual dispute as to how many of the construction projects involved work that required a license. The actual work that Romero performed is not in dispute; and the district court analyzed those undisputed facts to determine that, as a matter of law, four of the five construction projects involved work that required a license. Specifically, the district court found that Romero was deemed "an unlicensed contractor with respect to certain of the subcontracted construction work he performed on each of the [c]onstruction [p]rojects." In so finding, the district court relied on the affidavit of Andy Dalmy, the licensing manager of the Construction and Industries Division, which showed the results of his personal inspection of Romero's work.

**{16}** Moreover, even if Romero's work had been assigned individually within each construction project site, this Court's opinion in *Gamboa* does not allow Romero to separate his construction acts in such a manner to evade the licensing requirements under the CILA. *Gamboa*, 2004-NMCA-053, ¶ 16 (explaining in a case in which a contractor effectively asked this Court to "excuse the construction work he performed without a license and exempt him from the requirements of the CILA" that doing so "would encourage contractors to engage in creative contract drafting whereby they attribute all charges to the cost of materials and supplies and charge nothing for labor"). Thus, the district court correctly defined the construction projects as the five residences provided in the record and not by individual job assignments within those locations.

**EQUITABLE PRINCIPLES SUPERCEDED BY THE CILA**

**{17}** We next address Romero's argument that the CILA does not expressly deny all equitable actions for recovery of compensation. We are not persuaded. In *Triple B Corp.*, our Supreme Court held that, in addition to claims for breach of contract, Section 60-13-30(A) also bars an unlicensed contractor from bringing suit for the recovery of compensation

under a quantum meruit or quasi-contract theory. *Triple B Corp.*, 106 N.M. at 103, 739 P.2d at 972. The public policy behind the CILA's mandate to protect people from incompetent and irresponsible contractors, *see* § 60-13-1.1; *Peck*, 84 N.M. at 66, 499 P.2d at 688, operates to bar unlicensed contractors' suits for compensation even when the recipient of the work is thereby unjustly enriched. *Triple B Corp.*, 106 N.M. at 102, 739 P.2d at 971 (refusing to recognize an "equitable defense of unjust enrichment because the Legislature . . . necessarily authorized the unjust enrichment of the recipients of work performed by unlicensed contractors" and stating that the statute's policy "must override the judicial principle that disfavors unjust enrichment"). Further, the express language in Section 60-13-30(A) prohibiting an unlicensed contractor from bringing "any action in any court of the state for the collection of compensation" is a broad statement of the prohibition against unlicensed contractors' use of the courts to recover compensation under any theory, whether in law or in equity.

**{18}**    In arguing that his equitable claims should not be barred, Romero also relies on language in *Peck*, in which our Supreme Court stated that it was "reluctant to construe the statute more broadly than necessary" and that the "statute should not be transformed into an unwarranted shield for the avoidance of a just obligation." *Peck*, 84 N.M. at 66, 499 P.2d at 688 (internal quotation marks omitted). *Peck* adopted the doctrine of substantial compliance to avoid the harshness of Section 60-13-30 for contractors who had substantially complied with the CILA licensing provisions at the inception of the construction work. *Peck*, 84 N.M. at 66, 499 P.2d at 688. In the context of *Peck*, the words "just obligation" contemplate that a contractor who had complied with the CILA licensing requirements when beginning the construction work thereby retained a "just obligation" for the collection of compensation. *See id.* The Court did not apply this concept to an unlicensed contractor, such as Romero, who has not complied at all with the CILA licensing requirements. As such, Romero does not retain a "just obligation" for the collection of compensation, which the express language of the CILA bars.

**{19}**    Romero further relies on *Triple B Corp.* as creating a "glimmer of hope" for his equitable defenses. In that case, the unlicensed contractor had failed to establish the elements of equitable estoppel, and our Supreme Court, while expressly denying the unlicensed contractor's unjust enrichment defense, did not expressly deny an equitable estoppel exception to Section 60-13-30. *Triple B Corp.*, 106 N.M. at 102, 739 P.2d at 971. Our subsequent cases clearly indicate, however, that an unlicensed contractor's action for compensation is barred on all equitable principles due to the fact that "the public importance of discouraging such prohibited transactions outweighs equitable considerations of possible injustice as between the parties." *Gamboa*, 2004-NMCA-053, ¶ 17 (internal quotation marks and citation omitted); *see also Mascarenas*, 111 N.M. at 414, 806 P.2d at 63 ("The public policy behind the licensing requirement of the [CILA] is so strong that the element of consumer knowledge is of no consequence in our decision."). We agree with the district court's finding that equitable principles were not an appropriate remedy for Romero.

**CONTRACTOR'S RECOVERY OF COMPENSATION**

7

**PAID TO AN UNLICENSED SUBCONTRACTOR**

**{20}** Romero argues that Sivad cannot receive a refund of compensation paid to Romero for Romero's alleged violation because the CILA protects only consumers, of which contractors are excluded. Sivad disagrees and argues that Romero cannot retain compensation already received because *Mascarenas* bars an unlicensed contractor from retaining compensation for work performed in violation of the CILA. 111 N.M. at 414, 806 P.2d at 63. We address each argument in turn and conclude that, although a contractor is not excluded from the CILA's protection of "the people," Sivad is nevertheless barred from recovery in this case because of its failure to be a responsible contractor under the CILA.

**{21}** Although Sivad's counterclaim for recovery of payments made to Romero involved the same arguments applied to Defendants' defense of Romero's claims, the issues are not the same. In our discussion above, we address an unlicensed subcontractor attempting to receive compensation for work he performed that required a license. Sivad's counterclaim deals with a licensed contractor attempting to retrieve compensation paid for work performed by an unlicensed subcontractor that the licensed contractor hired. This is a matter of first impression in New Mexico. *Reule Sun Corp. v. Valles*, 2008-NMCA-115, ¶ 11, 144 N.M. 736, 191 P.3d 1197 (raising, without addressing, the issue of "whether a duly licensed contractor may recover for work performed by an unlicensed subcontractor"), *cert. granted*, 2008-NMCERT-008, 145 N.M. 255, 195 P.3d 1267.

**{22}** Romero argues that Section 60-13-30(A) only bars actions for compensation between the unlicensed contractor or subcontractor and the ultimate consumer of the construction—that is, the public, the landowner, or the homeowner. We do not agree that the statute or our case law is as limited as Romero argues. Section 60-13-1.1 states that the purpose of the CILA is to "promote the general welfare of the people of New Mexico by providing for the protection of life and property by adopting and enforcing codes and standards for construction, alteration, installation, connection, demolition and repair work." Our case law has indicated that the statute seeks to protect "the public." *See Mascarenas*, 111 N.M. at 413, 806 P.2d at 62 (referring to "consumers" and "the public" when discussing the purpose of the CILA); *Peck*, 84 N.M. at 66, 499 P.2d at 688 (including "the public" when discussing the CILA's purpose). Yet, no case states that a contractor is not a consumer or a member of "the people." *See generally Mascarenas*, 111 N.M. at 413-14, 806 P.2d at 62-63; *Gamboa*, 2004-NMCA-053 ¶¶ 13, 15-16; *see also* § 60-13-1.1. The point in *Mascarenas* was not to limit the scope of the CILA, but to restate the Legislature's intent to ensure that no unlicensed contractor may recover from anybody for work performed that requires a license. *See Mascarenas*, 111 N.M. at 413-14, 806 P.2d at 62-63. We see no reason to limit the CILA's scope to only consumers.

**{23}** However, although the CILA does not only protect consumers, it does not allow recovery by Sivad in this case. In addition to the CILA's stated purpose to protect people from unscrupulous contractors, it also states that, to effect its purpose, the Legislature intends that "contractors be required to furnish and maintain evidence of responsibility."

8

Section 60-13-1.1(C); *see Mascarenas*, 111 N.M. at 413, 806 P.2d at 62 (interpreting the purpose of the CILA as remedying the wrong of "exploitation of the public by incompetent and unscrupulous contractors who are unable or unwilling to obtain a license"). We construe the sections of the CILA together to give effect to the Legislature's intent. *See High Ridge Hinkle Joint Venture v. City of Albuquerque*, 1998-NMSC-050, ¶ 5, 126 N.M. 413, 970 P.2d 599 (explaining that, when "several sections of a statute are involved, they must be read together so that all parts are given effect"). "In determining legislative intent, we look not only to the language used in the statute, but also to the object sought to be accomplished and the wrong to be remedied." *Mascarenas*, 111 N.M. at 413, 806 P.2d at 62.

**{24}** Sivad cites *Mascarenas* for the contention that Romero should not be permitted to retain compensation received for licensed work for which he had no license. *See id*. at 414, 806 P.2d at 63. However, the facts in *Mascarenas* are different from the present case. In *Mascarenas*, a landowner hired an unlicensed contractor to do licensed work and then sought reimbursement of compensation already paid. *Id.* at 411-12, 806 P.2d at 60-61. *Mascarenas* held, "[a]s a matter of public policy, an unlicensed contractor may not retain payments made pursuant to a contract which requires him to perform in violation of the [CILA]" and granted the landowner a full refund. *Id.* at 414, 806 P.2d at 63. However, in the present case, a licensed general contractor is seeking recovery of payments made to an unlicensed subcontractor that the general contractor hired. There is no indication that Romero withheld information from Sivad or that Sivad, prior to hiring, would not have obtained information concerning Romero's licensure upon reasonable inquiry. From the Legislature's requirement that contractors "furnish and maintain evidence of responsibility," we infer that contractors must behave responsibly. *See* § 60-13-1.1(C). The Legislature's purpose of protecting the people of New Mexico from unscrupulous contractors would be thwarted if, after mandating that contractors behave responsibly and requiring that contractors possess applicable licenses, general contractors were then allowed recovery of compensation paid to unlicensed subcontractors that they irresponsibly hired and assigned to do work requiring a license. Therefore, we reverse the district court's order that Sivad be permitted to recover payments already made to Romero.

**PERSONAL LIABILITY OF AGENTS**

**{25}** Romero finally argues that he believed that he was working for Parker rather than Sivad and that he did not know that Sivad was even involved. Romero therefore contends that Parker is personally liable to him as an agent for an undisclosed principal. Parker argues, however, that he has no personal liability to Romero because there was substantial evidence to support the district court's decision against Romero on this issue and because Romero's claim that Parker is liable to Romero as an "undisclosed agent" of Sivad is flawed as a matter of law. We agree with Parker.

**{26}** In reviewing a substantial evidence claim, "[t]he question is not whether substantial evidence exists to support the opposite result, but rather whether such evidence supports the result reached." *Las Cruces Prof'l Fire Fighters v. City of Las Cruces*, 1997-NMCA-044,

9

¶ 12, 123 N.M. 329, 940 P.2d 177. "Additionally we will not reweigh the evidence nor substitute our judgment for that of the fact finder." *Id.* The district court found that Parker was the agent of Sivad, that Romero knew about Sivad, and that Romero's contract was with Sivad. In our review of the record, we conclude that substantial evidence supports the district court's findings: Sivad's signs and permits were posted at the construction sites, Romero received checks with Sivad's name on them, and other employees informed Romero that they worked for Sivad. The district court did not err in finding that Sivad was not an undisclosed principal, and, thus, Parker is not individually liable to Romero.

**CONCLUSION**

**{27}** We conclude that the CILA bars both an unlicensed subcontractor from recovering compensation from a general contractor and a general contractor who did not act responsibly in hiring an unlicensed subcontractor from recovering compensation already paid to the unlicensed subcontractor. We also conclude that equitable principles are not applicable to actions addressed under the CILA. We therefore affirm in part and reverse in part.

**{28}** **IT IS SO ORDERED.**

 

                                       **JAMES J. WECHSLER, Judge**

**WE CONCUR:**

 

**JONATHAN B. SUTIN, Judge**

 

**RODERICK T. KENNEDY, Judge**

 

**Topic Index for *Romero v. Parker*, No. 27,027**

| | |
|---|---|
| **CP** | **CIVIL PROCEDURE** |
| CP-SJ | Summary Judgment |
| | |
| **CM** | **COMMERCIAL LAW** |
| CM-AA | Agency, Agent |
| CM-CT | Contractors and Subcontractors |
| CM-LC | Licensed Contractor |
| | |
| **CN** | **CONTRACTS** |
| CN-PP | Public Policy |

**EL**          **EMPLOYMENT LAW**
EL-IC           Independent Contractor

**GV**          **GOVERNMENT**
GV-LC           Licensing

**MS**          **MISCELLANEOUS STATUTES**
MS-CL           Construction Industries Licensing Act

**RE**          **REMEDIES**
RE-EQ           Equity

**ST**          **STATUTES**
ST-IP           Interpretation