This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-37439**

**HIGH COUNTRY LANDSCAPES, LLC,**
**a New Mexico limited liability company,**

      Plaintiff/Counterdefendant-Appellee,

v.

**HENRY E. MCDONALD,**

      Defendant/Counterplaintiff-Appellant,

and

**HENRY E. MCDONALD,**

      Third-Party Plaintiff-Appellant,

v.

**JOSH BOTKIN in his corporate and individual**
**capacity as the Managing Member of High**
**Country Landscapes, LLC, and any and all**
**unknown claimants in the premises owned by**
**the Defendant-Counterplaintiff,**

      Third-Party Defendants/Appellees.

**APPEAL FROM THE DISTRICT COURT OF LINCOLN COUNTY**
**Daniel A. Bryant, District Judge**

Richard A. Hawthorne, P.A.
Richard A. Hawthorne
Ruidoso, NM

for Appellee

J. Robert Beauvais, P.A.
J. Robert Beauvais

Ruidoso, NM

for Appellant

**MEMORANDUM OPINION**

**BOGARDUS, Judge.**

**{1}** Defendant Henry E. McDonald appeals from the district court's judgment and decree of foreclosure on a mechanic's lien following a jury verdict awarding $25,251.26 to Plaintiff High Country Landscapes, LLC. On appeal, Defendant contends that: (1) the district court erred by dismissing Defendant's third-party complaint against Josh Botkin, Plaintiff's managing member, individually; (2) the district court erred by denying Defendant's motions for a directed verdict and for judgment as a matter of law; (3) the district court erred by refusing to tender Defendant's proposed jury instruction; and (4) a statement made by Plaintiff's counsel during rebuttal closing arguments constituted fundamental error. Because we hold that the district court erred in failing to grant Defendant's motion for judgment as a matter of law on certain issues, we reverse in part and remand. We otherwise affirm.

**BACKGROUND**

**{2}** Given that the parties are familiar with the facts and details of this case, we only briefly set forth pertinent facts and applicable law in this memorandum opinion, reserving further discussion of specific facts where necessary to our analysis. *See* Rule 12-405(B) NMRA (providing that appellate courts "may dispose of a case by non-precedential order, decision or memorandum opinion" under certain circumstances); *see also State v. Gonzales*, 1990-NMCA-040, ¶ 48, 110 N.M. 218, 794 P.2d 361 ("[M]emorandum opinions are not meant to be cited as controlling authority because such opinions are written solely for the benefit of the parties[, and s]ince the parties know the details of the case, such an opinion does not describe at length the context of the issue decided[.]").

**{3}** Plaintiff is a residential and commercial landscaping company that holds a MS-06 license for irrigation and drip systems. In December 2014, Defendant contracted with Plaintiff for landscape work on Defendant's two properties in Lincoln County for $75,000 (the original contract). Before Plaintiff began any work, Defendant contacted Plaintiff about additional work to fabricate and install large wrought iron gates and gate operators as well as masonry work for stone veneers on fireplaces and gates. Because this work was beyond the scope of Plaintiff's MS-06 license, Plaintiff agreed to find a subcontractor who was licensed to do this work, resulting in the first change order, adding an additional $70,000 to the original contract.

**{4}** Shortly thereafter, Plaintiff subcontracted the masonry work to Anthony Montaño, of Albuquerque Iron, who Plaintiff believed possessed the proper licensure. During the time Mr. Montaño was working on the subcontract, Defendant approached Plaintiff with

a request to change the location of one of the gates, relocate a cattle guard, and add additional materials and stone to the entry gate, resulting in the second change order and an additional $11,661 to the contract. Soon after, Plaintiff encountered difficulty working with Mr. Montaño, discovered that Mr. Montaño did not possess the proper license, and Mr. Montaño left the project.

{5}     Plaintiff identified and subcontracted the remainder of the masonry and concrete work to Armando Gomez of Express Stucco, which had a GB-02 license for general residential building, including masonry and concrete work. After some work had been done on the gate entries and concrete was about to be poured, Defendant contacted Plaintiff requesting that the gate footers be expanded and that the concrete be sent back, resulting in the third change order and an additional $5,750 to the contract. Defendant later contacted Plaintiff requesting the addition of a concrete patio, resulting in the fourth change order and an additional increase of $4,000. After Mr. Gomez poured the concrete patio, Defendant contacted Plaintiff, canceling the original contract for landscaping, resulting in the fifth change order and a net reduction of $50,000 of the contract after the cost of the patio.

{6}     At this point, while there was some work left to perform on the gates, Plaintiff attempted to remove himself from all remaining contracted work for Defendant, requesting that Defendant work directly with the subcontractor and fabricate and install the wrought iron and purchase the gate operators himself, resulting in the sixth change order and a reduction (or credit) of $18,677.91 on the contract. However, shortly thereafter, Defendant requested that Plaintiff purchase the gate operators on his behalf, which Plaintiff agreed to do on the condition of payment upon delivery, resulting in the seventh change order and an addition of $13,261.67 to the contract. Plaintiff purchased and delivered the gate operators. Defendant did not pay for them.

{7}     Throughout this time, Defendant made progress payments toward the project, totaling $92,000, leaving a total of $24,251.26 unpaid; this unpaid amount included the $13,261.67 cost of the gate operators. In November 2015, Plaintiff filed a mechanic's lien against Defendant's property, claiming $24,251.26. In March 2016, Plaintiff filed a complaint for money judgment and to foreclose on the lien. Defendant filed counterclaims against Plaintiff and a third-party complaint against Mr. Botkin, Plaintiff's managing member, individually. The case was tried before a jury, which found in favor of Plaintiff and awarded $25,251.26, with interest, and a judgment and decree of foreclosure was entered against Defendant. This appeal follows.

## DISCUSSION

{8}     We begin by noting that Defendant's briefs suffer from numerous technical and substantive deficiencies. The brief in chief does not adequately describe the nature and facts of the case, as required under our rules. *See* Rule 12-318(A)(3) NMRA (requiring briefs in chief to contain "a summary of proceedings, briefly describing the nature of the case, the course of proceedings and the disposition in the court below, and including a summary of the facts relevant to the issues presented for review. This summary *shall*

*contain citations to the record proper, transcript of proceedings or exhibits supporting each factual representation*" (emphasis added)). Throughout briefing, counsel fails to provide accurate citations to the record proper, particularly when citing specific quotations and occurrences, and Defendant makes multiple inaccurate factual representations to this Court. Additionally, counsel makes numerous arguments that either fail to cite any legal authority at all or cite to cases which do not stand for those propositions. Such deficiencies may lead to sanctions, *see* Rule 12-312(D) NMRA (providing that "[f]or any failure to comply with these rules . . . , the appellate court may, . . . on its own initiative, take such action as it deems appropriate . . . , including . . . dismissal"), *see also* Rule 12-401(B)(4) NMRA (providing that "[a]n appeal . . . may be dismissed by an appellate court for failure to comply with rules under Rule 12-312"), and the failures in Defendant's briefs present impediments to meaningful appellate review.

**{9}** This Court will not search the record and develop a party's arguments for them, as it is a party's responsibility to properly present the relevant information and legal authorities for this Court's analysis. *See Elane Photography, LLC v. Willock*, 2013-NMSC-040, ¶ 70, 309 P.3d 53 ("We will not review unclear arguments, or guess at what a party's arguments might be." (alteration, internal quotation marks, and citation omitted)). Within the limitations presented by Defendant's briefing, we address each of Defendant's arguments in turn.

**I.     The District Court Did Not Err by Dismissing Defendant's Third-Party Claim Against Mr. Botkin**

**{10}** The district court dismissed the third-party complaint against Mr. Botkin after finding that Defendant had not personally served Mr. Botkin and ruling that without personal service of process, the district court did not have personal jurisdiction to hear claims against him. Defendant does not dispute that he failed to personally serve Mr. Botkin, but argues that the district court nonetheless erred by dismissing the third-party complaint because due process was satisfied when Defendant served Plaintiff High Country Landscapes, LLC, of which Mr. Botkin was the managing member.

**{11}** Additionally, Defendant contends that Plaintiff's motion to dismiss the third-party complaint violated Rule 1-016 NMRA and that Plaintiff lacked standing to bring such a motion on behalf of Mr. Botkin. This argument mischaracterizes the proceedings; Plaintiff did not make such a motion and the district court sua sponte dismissed the third-party claim for lack of personal jurisdiction. The district court's review of the third-party complaint arose during a discussion of jury instructions when Plaintiff requested that the district court strike references to Mr. Botkin from proposed jury instructions. At that time, it was revealed that Mr. Botkin had not been personally served nor had he waived service. Because Plaintiff did not move to dismiss the complaint on Mr. Botkin's behalf, we decline to address Defendant's arguments regarding the propriety of Plaintiff making such a motion.

**{12}** Turning to Defendant's remaining arguments on this issue, we note the following. In relevant part, our rules governing service on an individual require that personal

service of process "be made upon an individual by delivering a copy of a summons and complaint or other process . . . to the individual personally," with various alternatives available if the individual refuses to accept service or after personal service is attempted. Rule 1-004(F)(1), (2) NMRA. Our rules specifically note that "[s]ervice may be made, *subject to the restrictions and requirements of this rule*, by methods authorized by this rule or in the manner provided for by any applicable statute, to the extent that the statute does not conflict with this rule." Rule 1-004(E)(2) (emphasis added). "It is well established in our cases that a court lacks jurisdiction to pronounce judgment over a [party] unless that [party] has been properly summoned into court. . . . Failure to serve a party with process in a proper manner generally means that the court has no power over that party and cannot render a judgment binding that party." *Trujillo v. Goodwin*, 2005-NMCA-095, ¶ 8, 138 N.M. 48, 116 P.3d 839 (alterations, omission, internal quotation marks, and citation omitted).

**{13}**    Defendant conceded to the district court that he failed to serve Mr. Botkin, but argues on appeal that due process requirements were satisfied because Mr. Botkin received actual or constructive notice of the third-party complaint when Defendant served Plaintiff. Without deciding whether due process was satisfied, we cannot overlook Defendant's failure to serve Mr. Botkin in compliance with our rules. *See id.* ¶ 10 (refusing to overlook technical deficiencies in service, although defendant had actual notice of the case, where plaintiff "cite[d] no cases standing for the proposition that a district court has jurisdiction to issue a binding judgment against a party not served in accordance with Rule 1-004 who does not somehow waive the defects in the service"). Defendant fails to cite to any authority for the proposition that a district court has jurisdiction over a party who neither received proper service nor waived defects in service, and "[w]here a party cites no authority to support an argument, we may assume no such authority exists." *Curry v. Great Nw. Ins. Co.*, 2014-NMCA-031, ¶ 28, 320 P.3d 482. Because Mr. Botkin was not served in compliance with Rule 1-004 and did not waive service, the district court lacked jurisdiction to render a judgment binding him. Therefore, we affirm the district court's dismissal of the third-party complaint against Mr. Botkin.

## II.    The District Court Erred by Denying Defendant's Motion for Judgment as a Matter of Law for the Portions of the Contract That Violated CILA

**{14}**    Defendant argues that the district court erred in denying his motions for a directed verdict and judgment as a matter of law because Plaintiff was not duly licensed to perform the work as required under NMSA 1978, Section 60-13-12 (1989) and 14.6.6.8(B)(1) NMAC and was therefore barred by NMSA 1978, Section 60-13-30 (1977) from recovery for unlicensed work.

**{15}**    "We will not disturb the district court's denial of [a defendant's] renewed motion for judgment as a matter of law unless the jury's verdict was unsupported by substantial evidence." *Bustos v. Hyundai Motor Co.*, 2010-NMCA-090, ¶ 27, 149 N.M. 1, 243 P.3d 440. "[W]e review de novo a lower court or administrative agency's application of law to facts." *TPL, Inc. v N.M. Tax'n & Revenue Dep't*, 2003-NMSC-007, ¶ 10, 133 N.M. 447,

64 P.3d 474. "The meaning of language used in a statute is a question of law that we review de novo." *Cooper v. Chevron U.S.A., Inc.*, 2002-NMSC-020, ¶ 16, 132 N.M. 382, 49 P.3d 61. When presented with a question of statutory construction:

> [T]he plain language of a statute is the primary indicator of legislative intent. Courts are to give the words used in the statute their ordinary meaning unless the [L]egislature indicates a different intent. The [C]ourt will not read into a statute or ordinance language which is not there, particularly if it makes sense as written. [Courts] give persuasive weight to long-standing administrative constructions of statutes by the agency charged with administering them. . . . [W]here several sections of a statute are involved, they must be read together so that all parts are given effect.

*High Ridge Hinkle Joint Venture v. City of Albuquerque*, 1998-NMSC-050, ¶ 5, 126 N.M. 413, 970 P.2d 599 (internal quotation marks and citations omitted).

**{16}** Here we are asked to interpret Section 60-13-12 and Section 60-13-30 of the Construction Industries Licensing Act (CILA), as well as Regulation 14.6.6.8(B)(1) of the New Mexico Administrative Code implementing CILA. Section 60-13-12(B) of CILA reads as follows:

> No bid on a contract shall be submitted unless the contractor has a valid license issued by the division to bid and perform the type of work to be undertaken; provided this subsection shall not prohibit a licensed contractor from bidding or contracting work involving the use of two or more trades, crafts or classifications if the performance of the work in the trades, crafts or classifications other than the one in which he is licensed is incidental or supplemental to the performance of the work in the trades, crafts or classifications for which he is licensed; and further provided that work coming under the jurisdiction of the mechanical bureau or the electrical bureau of the division must be performed by a contractor licensed to perform that work.

Additionally, Regulation 14.6.6.8(B)(1) of the Administrative Code concerning construction licensure provides:

> A validly licensed person may bid and contract as the prime contractor of a project only if the major portion of the work, based on dollar amount, is authorized by the classification of the prime contractor's license. Any work outside the scope of the prime contractor's license classification(s) must be subcontracted.

Notably, failure to comply with CILA licensing requirements limits a contractor's remedies. Section 60-13-30(B) states that "[a]ny contractor operating without a license as required by [CILA] shall have no right to file or claim any mechanic's lien as now provided by law."

**{17}** Defendant argues that Plaintiff was operating without a license as required by CILA because the majority of the work done, based on dollar value, was for masonry and concrete work, which was outside the scope of Plaintiff's license. Defendant then argues that because Plaintiff was not duly licensed, Plaintiff cannot recover or foreclose on a mechanic's lien.

**{18}** Given this Court's strict application of the licensure requirements under CILA, we need not look beyond the plain language of these statutes. *See Little v. Baigas*, 2017-NMCA-027, ¶ 30, 390 P.3d 201 ("New Mexico's statutes and case law reflect strong public policy against unlicensed contractors."); *see also Gamboa v. Urena*, 2004-NMCA-053, ¶ 14, 135 N.M. 515, 90 P.3d 534 ("[I]f a contractor has no license when the construction contract is formed, it makes no difference if the contractor acquires a license in the course of performing the construction work; the contractor is still barred from recovery[.]"). Taken together, our laws plainly state that a contractor may not contract for work that requires two or more licenses when the majority of the work to be done is beyond the scope of the contractor's license. *See* § 60-13-12(B); 14.6.6.8(B)(1) NMAC. Additionally, a contractor may not file a mechanic's lien for unlicensed work. Section 60-13-30(B).

**{19}** In this case, Plaintiff was in compliance with the licensing requirements of CILA in the original contract for $75,000; the original contract was for irrigation work, for which Plaintiff was licensed, and landscaping work, which did not require any license. However, the second and third change orders for masonry and concrete work totaling $81,661 shifted the majority of the work, as determined by dollar amount, outside the scope of Plaintiff's MS-06 license and therefore violated CILA licensing requirements. The imbalance only worsened with each subsequent change order for more masonry and concrete work, particularly when the original contract for landscaping was canceled altogether. Because Plaintiff was not duly licensed for the amended contract, Plaintiff was prohibited by Section 60-13-30(B) from recovery for the unpaid masonry and concrete work through a mechanic's lien. Therefore, we hold that the district court erred in not granting Defendant's directed verdict and motion for judgment as a matter of law for the costs of the masonry and concrete work.

**{20}** However, we do not read the statutes and regulation to bar recovery for the cost of materials supplied by the Plaintiff, work which did not require a license. These costs were supported by substantial evidence. *See Bustos*, 2010-NMCA-090, ¶ 27 ("We will affirm the jury's verdict if there is evidence to support it." (internal quotation marks and citation omitted)). "Substantial evidence is such relevant evidence that a reasonable mind would find adequate to support a conclusion." *Id.* In this case, Mr. Botkin testified that he contracted with Defendant to supply the gate operators for $13,261.67, as shown in a change order, and Defendant failed to pay this amount. This evidence was sufficient for the jury to reasonably conclude that Defendant failed to pay Plaintiff $13,261.67 for the gate operators as contracted. Because the purchase of gate operators was not subject to the licensing requirements of CILA, Section 60-13-30(B) does not prohibit Plaintiff's recovery of the cost of them and because these materials were provided for the construction of a structure, Plaintiff was entitled to recover the

cost of the gate operators through a mechanic's lien. *See* NMSA 1978, § 48-2-2 (1993) (stating that persons providing materials for the construction of a structure entitled to a mechanic's lien). For these reasons, we hold that although Plaintiff was barred from recovering for unlicensed masonry and concrete work, he was entitled to foreclose his mechanic's lien for the costs of the gate operators. Therefore, we affirm the judgment as to $13,261.67 for the gate operators, with tax and interest, and vacate the remaining jury award.

### III. The District Court Did Not Err by Denying Defendant's Proposed Jury Instruction

**{21}** Defendant contends that the district court erred by refusing to tender his proposed jury instruction #27,[1] which would have instructed the jury in relevant part that:

> To [e]stablish [b]reach of [c]ontract and foreclose the mechani[c's] lien[,] . . . . High Country Landscapes LLC has the burden of proving . . . [that a]t the time the construction contracts were signed . . . High Country Landscapes LLC held the proper and necessary license to perform masonry and concrete construction.

"The propriety of denying a jury instruction is a mixed question of law and fact that we review de novo." *Akins v. United Steelworkers of Am.*, *AFL-CIO, CLC, Local 187*, 2009-NMCA-051, ¶ 42, 146 N.M. 237, 208 P.3d 457 (internal quotation marks and citation omitted).

**{22}** Defendant argues that it was error for the district court to refuse to instruct the jury with proposed instruction #27 because Defendant was entitled to jury instructions that stated the applicable law, and Defendant claims that the applicable law required Plaintiff to have a masonry license because the majority of the work contracted was for masonry work.

**{23}** "If a legal theory is supported by the evidence, a party is entitled to have the jury instructed on that theory." *Id.* ¶ 42. However, "[i]f instructions, considered as a whole, fairly present the issues and the law applicable thereto, they are sufficient." *Sonntag v. Shaw*, 2001-NMSC-015, ¶ 15, 130 N.M. 238, 22 P.3d 1188 (internal quotation marks and citation omitted). "It is not error to deny requested instructions when the instructions given adequately cover the law to be applied." *Salopek v. Friedman*, 2013-NMCA-087, ¶ 16, 308 P.3d 139 (internal quotation marks and citation omitted). "A trial court's refusal to submit a jury instruction is not error if the submission of the instruction would mislead the jury by promoting a misstatement of the law." *State v. Nieto*, 2000-NMSC-031, ¶ 17, 129 N.M. 688, 12 P.3d 442.

---

[1]Defendant also argues that the district court erred by denying proposed jury instruction #28. However, Defendant's proposed jury instruction #28 was accepted by the district court and read as jury instruction #9. Therefore, we analyze only proposed jury instruction #27.

**{24}** In this case, the district court found that Defendant's proposed jury instruction misstated the applicable law and that other instructions adequately covered the applicable law. Proposed jury instruction #27 purports to instruct the jury on the necessary elements for a breach of contract claim; however, the proposed instruction would have required Plaintiff to establish that it held a masonry and concrete license as an element of the breach of contract claim in order to recover. This misstates the law because, as described above, in order to recover for the portion of the contract governed by CILA, Plaintiff was required to establish that (1) it possessed the proper license for the *majority* of the contract as determined by dollar amount, and (2) the subcontractor held the proper license for the remainder of the work. Further, the given instructions on breach of contract and licensure adequately and fairly presented the issues and applicable law in this case. Because Defendant's proposed jury instruction #27 misstated the applicable law, we hold that the district court did not err by rejecting it.

## IV.    Alleged Statement by Plaintiff Does Not Constitute Fundamental Error

**{25}** Finally, Defendant claims that Plaintiff's counsel, during rebuttal closing argument, stated that a defense verdict would "take food out of the mouth of [Mr. Botkin's] family[,]" which was a false and misleading statement that improperly raised a new claim of unjust enrichment. Defendant concedes that no objection was raised regarding this statement and asks this Court to review the statement for fundamental error.

**{26}** Defendant, however, fails to provide a citation to the record to allow us to identify where Plaintiff made the alleged statement. "It is not our practice to rely on assertions of counsel unaccompanied by support in the record." *Chan v. Montoya*, 2011-NMCA-072, ¶ 9, 150 N.M. 44, 256 P.3d 987 (internal quotation marks and citation omitted). Moreover, where a party fails to cite any portion of the record to support its factual allegations, the Court need not consider its argument on appeal. *See Santa Fe Expl. Co. v. Oil Conservation Comm'n*, 1992-NMSC-044, ¶ 11, 114 N.M. 103, 835 P.2d 819. Nonetheless, this Court reviewed Plaintiff's closing arguments, and was unable to locate the alleged statement. Therefore, given that Defendant failed to provide evidence of the existence of such a statement, we decline to consider Defendant's arguments on the issue further.

## CONCLUSION

**{27}** Based on the foregoing, we vacate the jury's verdict and remand to the district court with instructions to vacate its previous judgment and enter a new judgment and decree of foreclosure for Plaintiff for $13,261.67, with tax and interest. We otherwise affirm.

**{28}    IT IS SO ORDERED.**

**KRISTINA BOGARDUS, Judge**

**WE CONCUR:**

**J. MILES HANISEE, Chief Judge**

**JANE B. YOHALEM, Judge**